Jerry K. FORBES, Plaintiff,

v.

Lucille ROEBUCK, Individually and in her official capacity as Chairman of the Kentucky Board of Pardons and Paroles, et.al., Defendants.

No. 432.

United States District Court, E. D. Kentucky, Frankfort Division.

Jan. 14, 1974.

Jerry K. Forbes, pro se, Dean Hill Rivkin, Scott T. Wendelsdorf, Lexington, Ky., for plaintiff.

Bruce K. Davis, Dept. of Corrections, Frankfort, Ky., for defendants.

## MEMORANDUM

SWINFORD, District Judge.

■ This action initiated by a re-incarcerated parolee questions Kentucky's compliance with the procedures for parole revocation decreed in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The petitioners in that case were returned to prison without hearing following an administrative determination that violations of parole conditions had occurred. The Court's lengthy discussion of the origins and philosophy of the nation's conditional release systems culminated in a holding that although the revocation of parole is not classifiable as a criminal prosecution, the resultant "grievous loss" to the convict dictates some measure of due process applicability. The Court concluded that an appropriate balance of interests could be achieved by (1) a "local hearing" at the time of the parolee's arrest and (2) a "final hearing" prior to the ultimate revocation of parole. The initial hearing should be

> "conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available. . . . Such an inquiry should be seen as in the nature of a 'preliminary hearing' to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." Id., at 485, 92 S.Ct. at 2602.

Although this proceeding may be conducted informally by any official other than the supervising parole officer, certain safeguards must be accorded: no-

tice of the purpose of the hearing; an opportunity to testify and introduce evidence; confrontation of adverse witnesses in most instances; and a digest of evidence relied upon in preliminarily revoking parole. A finding of probable cause by the hearing officer justifies recommitment pending final proceedings. Id., at 485–487, 92 S.Ct. 2593.

■ The Court also prescribed a "final revocation hearing" within a reasonable time following imprisonment. Id., at 488, 92 S.Ct. 2593. The scope of this hearing transcends a mere determination of probable cause: it must ultimately "resolve any contested facts and determine whether revocation is warranted". Id. While recognizing the desirability of flexibility and disclaiming an intention to legislate state procedure, the Court did outline the minimum requirements of such a hearing:

> "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board . . . and (f) a written statement by the fact-finders as to the evidence relied on and reasons for revoking parole." Id., at 489, at 92 S.Ct. 2604.

Although Morrissey deferred the question of whether counsel must be provided, the later case of Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), vested this determination in the discretion of the parole board:

> "Although the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in

which fundamental fairness . . . will require that the State provide at its expense counsel for indigent probationers or parolees.

(C)ounsel should be provided in cases where, after being informed of his right to request counsel, the . . . parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions . . .; or (ii) that, even if the violation is a matter of public record or is uncontested there are substantial reasons which justified or mitigated the violation . . . and that the reasons are complex or otherwise difficult to develop or present." Id., at 790, 93 S.Ct. at 1763.

The complaint in the case at bar alleges that parole officer Thomas Simpson granted Forbes permission to move to Florida following conferences with the parolee, as well as his wife and mother. Following the departure, the plaintiff conferred with Simpson on several occasions by telephone and was assured that he was no longer on parole. On March 16, 1973, Forbes was arrested in Florida and returned to the Kentucky Penitentiary without any local hearing. It is also claimed that the final revocation hearing was defective in that the plaintiff was denied advance notice of the proceeding, a resume of incriminating evidence, legal representation, a digest of findings supporting revocation, and confrontation of adverse witnesses. It is contended that the parole board was informed of Forbes' belief that his absence from Kentucky was permissible. The complaint also alleges that the defendants have engaged in a conspiracy to harass Forbes' wife and mother, who had supplied affidavits buttressing his version of the facts.

The plaintiff has moved for a preliminary injunction, seeking either immediate release or compliance with the Morrissey requirements. Should the latter demand be granted, Forbes asks appointment of an attorney for the hearing, and further claims that the manifest bias on the part of the parole board dictates that this court determine whether the claimed violations are substantiated.

The defendants assert through a motion for summary judgment that neither Simpson nor the Department of Corrections granted permission for a change of residence. The parole board urges that the Morrissey requirements were fully satisfied. When Forbes' absence became known, notice of hearing was mailed to his last known address; the parolee failed to appear at the scheduled hearing at Henderson, Kentucky, where the issuance of an arrest warrant was recommended following a determination that probable cause existed to believe that Forbes had absconded. At a final hearing following re-incarceration, Forbes admitted violating the conditions of parole. While the defendants admit communicating with Forbes' witnesses, it is claimed that the sole purpose of these contacts was to confirm the authorship of the exculpatory statements and inform the affiants of the Kentucky penalties for false swearing.

It appears from the record that the state authorities have not fully complied with the due process requirements surrounding revocation of parole. The "local hearing" was defective in that (1) it was held before, rather than after, Forbes' arrest; (2) it was not conducted near the place of arrest or violation. Had the hearing been properly scheduled, Forbes would have been present to explain his actions. The scheme employed resulted in a *de facto* abrogation of the safeguards outlined in Morrissey. This error would perhaps be insignificant where a parolee is accused of other violations and can easily be notified;

however, dispatching of notice to a local address will frequently result in an *in absentia* proceeding where the parolee is charged with absconding from supervision. The plaintiff in Downes v. Norton, D.Conn., 360 F.Supp. 1151 (1973), attacked a "good time" forfeiture hearing conducted in his absence. While questioning the applicability of Morrissey to parole rescission proceedings, and noting that in certain circumstances a criminal trial may proceed without the defendant, the court did note that such hearings generally violate due process guarantees:

> "(T)here can be no doubt that, at least in the circumstances of these cases, the *in absentia* hearing is unconstitutional. Presence at a hearing is a basic ingredient of due process . . . (T)he government cites no instance where escape justified the commencement of an *in absentia* hearing concerning charges not previously made." Id., at 1154.

The pre-arrest scheduling of the Forbes hearing violated another of the requirements outlined in Morrissey: that the "inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest . . ." Id., at 485, of 408 U.S., at 2603 of 92 S.Ct. Instead, the parolee was returned to Kentucky without a hearing at the place of the alleged violations. This court neither perceives nor is supplied with any justification for the manner of scheduling this hearing. While delaying the inquiry would perhaps have been more burdensome, a post-arrest hearing would have insured an opportunity for testimony and confrontation.

■ The defendants claim that Forbes was accorded a final revocation hearing in accordance with the Morrissey dictate and that he admitted being in Florida without permission. The plaintiff concedes that a final hearing was conducted, but argues that the failure to accord prior notice of the hearing impaired his ability to summon witnesses or prepare a defense; it is also claimed that Forbes was not informed of the evidence against him, allowed to confront or cross-examine adverse witnesses, supplied written findings of fact for the revocation, or provided counsel.

A full hearing before the parole board would have been unnecessary had Forbes admitted breaching the conditions of his release, Morrissey v. Brewer, supra, 408 U.S., at 487, 92 S.Ct. 2593; such an admission might also have rendered counsel unnecessary, Gagnon v. Scarpelli, supra, 411 U.S. at 790, 93 S.Ct. 1756. Nevertheless, the hearing was defective in that Forbes was denied reasonable prior notice and notification of the reasons for revocation.

An order will be entered directing state authorities to accord Forbes a hearing within thirty days. While it may be doubted that an attorney would have been necessary at the prior hearing, the defects in the local and final hearings coupled with the plaintiff's present denial of violating parole intimate that an attorney should be provided at the hearing. See Gagnon v. Scarpelli, supra, at 791, 93 S.Ct. 1756.

The court finds no merit in the claims that the parole board is incapable of impartial judgment; the allegations of conspiracy are similarly without factual foundation.