274 N.J. Super. 565 (1994)
644 A.2d 1122
IRA BOLYARD, TIMOTHY COLEMAN, WILLIAM FRANK, EDWARD MITCHELL AND JAMES QUARLES AND NEW JERSEY ASSOCIATION ON CORRECTION, PLAINTIFFS-APPELLANTS-CROSS-RESPONDENTS,
v.
DOUGLAS BERMAN, TREASURER, STATE OF NEW JERSEY; NEW JERSEY STATE PAROLE BOARD AND JAMES FLORIO, GOVERNOR OF NEW JERSEY, DEFENDANTS-RESPONDENTS-CROSS-APPELLANTS, AND DEPARTMENT OF THE PUBLIC ADVOCATE, OFFICE OF THE PUBLIC DEFENDER; GENERAL ASSEMBLY OF THE STATE OF NEW JERSEY AND SENATE OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 10, 1994.
Decided July 6, 1994.
*568 Before Judges MICHELS, SKILLMAN and WEFING.
Patrick F. McAndrew argued the cause for appellants-cross-respondents (Brandt, Haughey, Penberthy, Lewis & Hyland, attorneys; Eileen K. Fahey and Mr. McAndrew, on the brief).
Michael Carlin, Deputy Attorney General, argued the cause for respondents-cross-appellants Treasurer Berman, New Jersey State Parole Board and Governor Florio (Deborah T. Poritz, Attorney General, attorney; Joseph L. Yannotti, Assistant Attorney General, of counsel; Mr. Carlin, on the brief).
No briefs have been filed by respondents Public Defender, General Assembly or Senate.
The opinion of the court was delivered by SKILLMAN, J.A.D.
Plaintiffs seek by this appeal to establish that indigent parolees charged with violations of parole have a right to counsel under either the New Jersey Constitution or state common law which is broader than that guaranteed by the United States Constitution as interpreted by the Supreme Court in Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). Plaintiffs also seek to establish that the State cannot satisfy its obligation of providing counsel to indigents in parole revocation proceedings by the assignment of members of the private bar, but must instead *569 appropriate sufficient funds to the Public Defender's Office to perform this responsibility.
When their complaint was filed, plaintiffs Bolyard, Coleman, Frank, Mitchell and Quarles were indigent parolees who had been charged with violations of parole but who had not been assigned counsel due to the Legislature's failure to fund the Parole Revocation Unit of the Public Defender's Office for the 1991-92 fiscal year. Plaintiff New Jersey Association on Correction, which subsequently joined in this action, describes itself as "an organization of citizens working together for an effective criminal justice system" which provides various services to offenders and victims, including "resource centers for parole and probation purposes." See New Jersey Ass'n on Correction v. Lan, 80 N.J. 199, 204, 403 A.2d 437 (1979). Defendant New Jersey State Parole Board has the statutory responsibility to administer the State's parole system, see N.J.S.A. 30:4-123.48, which includes the conduct of parole revocation proceedings. See N.J.S.A. 30:4-123.62 to -123.63. Defendant Office of the Public Defender (the Public Defender) has the statutory responsibility to provide legal representation to indigents charged with criminal offenses, N.J.S.A. 2A:158A-5, as well as to represent indigent parolees charged with violations of parole. N.J.S.A. 2A:158A-5.1. The other defendants are all state officials who are responsible for the formulation and enactment of the Annual Appropriations Act under which appropriations are made to all state agencies, including the Public Defender.
In June 1991, the Legislature passed and the Governor signed into law the Annual Appropriations Act for 1991, L. 1991, c. 185, which contained a provision withholding any appropriation to the Public Defender for the purpose of providing legal representation to indigent persons appearing before the Parole Board:
Notwithstanding any provision of section 2 of P.L. 1974, c. 33 [N.J.S.A. 2A:158A-5.1], or any other provision of law, or any other provision of this appropriations act, no State funds are appropriated to fund the expenses associated with the legal representation of persons before the State Parole Board or the Parole Bureau.
 [L. 1991, c. 185, 1991 N.J. Laws 1017,
 1083.][1]
*570 Around the same time, the then Public Defender announced that his office would no longer be able to provide representation to parolees charged with violations of parole due to the Legislature's withholding of appropriations for this purpose.
Plaintiffs then commenced this action, asserting that there is a right guaranteed under both the United States Constitution and the New Jersey Constitution, as well as under other provisions of state law, to counsel in parole revocation proceedings, and seeking to compel defendants to continue the funding required to enable the Public Defender to provide such representation. The matter was brought before the trial court on October 16, 1991, pursuant to an order to show cause and defendants' motions to dismiss. The trial court recognized that some indigent parolees charged with violations of parole are entitled to counsel under the United States Constitution as interpreted by the Supreme Court in Gagnon. However, the court concluded that there is no basis under the New Jersey Constitution or other provision of state law for the recognition of a more expansive right to counsel than is guaranteed by Gagnon. The court also concluded that there is no basis for requiring the Legislature to continue funding the Parole Revocation Unit in the Public Defender's office. The court further recognized that neither the Parole Board nor any other state agency had established a system to provide indigents the representation guaranteed by Gagnon after the Public Defender announced that he would be unable to continue providing legal representation in parole revocation proceedings. Accordingly, the trial court entered an order on October 28, 1991, directing the parties to conduct discovery for the purpose of providing information "to assist the Court in fashioning a ruling in accord with Gagnon v. Scarpelli."[2]
*571 Thereafter, the Parole Board, with the assistance of plaintiffs, the Public Defender's Office and the Administrative Office of the Courts (AOC), undertook to develop a system for providing counsel to indigent parolees entitled to representation under the standards set forth in Gagnon. However, after six months elapsed without the Parole Board adopting such a system, plaintiffs filed a motion in April of 1992 which, among other things, asked the trial court to set a schedule for the Parole Board "to propose a remedy to screen citizens and to provide counsel to citizens who require counsel at parole revocation hearings." The court granted plaintiffs' motion and entered an order on May 28, 1992, which directed defendants to present a proposal by July 2, 1992 for "a remedy to ensure that counsel is provided for citizens whose parole may be revoked, under the criteria set forth in Gagnon v. Scarpelli."
The Parole Board submitted a proposal to the trial court in conformity with this order on July 2, 1992. Shortly thereafter, plaintiffs filed a motion seeking modifications of this proposal. In addition, the AOC and the Office of Public Defender submitted comments.
After the trial court adjourned consideration of plaintiffs' motion on several occasions, apparently for the purpose of obtaining further comments from the AOC regarding its role in the implementation of the Parole Board's proposal, plaintiffs filed a motion seeking to enjoin the Parole Board from detaining any person on an alleged parole violation or from revoking any person's parole until it implemented a system for providing counsel for indigent parolees in conformity with Gagnon. The court denied the requested *572 injunctive relief, but entered an order on December 3, 1992, which approved the Parole Board's proposal for providing counsel to indigent parolees charged with violations of parole, subject to certain modifications agreed to by the Parole Board.
The procedures approved by the trial court require the Parole Board to screen indigent parolees to determine whether they are entitled to counsel under Gagnon. This screening responsibility is performed by "parole counselors," who the Parole Board is responsible for training. If the Parole Board determines that a parolee is entitled to counsel, it refers his or her name to the AOC to verify indigency, and if the parolee satisfies this condition, the matter is referred to the Assignment Judge of the vicinage in which the parole revocation probable cause hearing is scheduled to be heard for the assignment of counsel pursuant to Rule 3:27-2.
Thereafter, plaintiffs filed a motion for an award of counsel fees under the Civil Rights Attorney's Fees Awards Act of 1976. 42 U.S.C.A. § 1988(b). The trial court granted this motion, finding that "plaintiffs were the prevailing party in this litigation, because it was through their efforts that the Parole Board adopted a remedial scheme to guarantee their rights pursuant to Gagnon v. Scarpelli," and awarded them $20,665 in counsel fees.
Plaintiffs have appealed from the court's order of December 3, 1992, approving the Parole Board's procedures for providing assigned counsel under the circumstances required by the Supreme Court in Gagnon, contending that, as a matter of New Jersey law, indigent parolees should be assigned counsel in all parole revocation proceedings and that the Legislature should be required to appropriate funds to provide that representation through the Office of Public Defender. The Parole Board has filed a cross-appeal challenging the trial court's award of counsel fees to plaintiffs.
We reject plaintiffs' argument that New Jersey law entitles indigent parolees charged with violations of parole to legal representation in a broader range of circumstances than is required under the United States Constitution, as interpreted in Gagnon. *573 We also reject plaintiffs' argument that the State is required to provide legal representation to such parolees by funding a Parole Revocation Unit in the Public Defender's Office. Accordingly, we affirm the trial court's order of December 3, 1992, insofar as it rejects these arguments and requires the assignment of members of the private bar to provide legal representation to indigent parolees under the standards set forth in Gagnon. We also agree with the trial court's determination that plaintiffs are "prevailing parties" within the intent of 42 U.S.C.A. § 1988 who are entitled to an award of counsel fees. However, the court failed to set the amount of that award in accordance with the principles set forth in Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Therefore, we remand the matter to the trial court for reconsideration of the amount of the award of counsel fees.

I
In Gagnon, the Supreme Court of the United States held that the right of indigent parolees to representation by assigned counsel in parole revocation proceedings depends upon the circumstances of each individual case. On the one hand, a parolee "may well have difficulty in presenting his version of a disputed set of facts where the presentation requires the examining or cross-examining of witnesses or the offering or dissecting of complex documentary evidence." 411 U.S. at 787, 93 S.Ct. at 1762, 36 L.Ed.2d at 664. On the other hand, a rigid rule requiring counsel to be provided in all such cases "would impose direct costs and serious collateral disadvantages without regard to the need or the likelihood in a particular case for a constructive contribution by counsel." Ibid. For example, "[i]n most cases ... [the] parolee has been convicted of committing another crime or has admitted the charges against him." Ibid. Moreover, the introduction of counsel would significantly alter the nature of these proceedings: the decision-making process would be prolonged, the financial cost incurred by the State would be substantial, and there would be a danger that the hearing body would be less attuned to the *574 parolee's rehabilitation needs because it would be distracted by the adversarial nature of such a process. Id. at 787-88, 93 S.Ct. at 1762, 36 L.Ed.2d at 665. Consequently, the Court adopted a case-by-case approach for determining the right of indigent parolees to counsel in parole revocation proceedings:
Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself. In every case in which a request for counsel at a preliminary or final hearing is refused, the grounds for refusal should be stated succinctly in the record.
[Id. at 790-91, 93 S.Ct. at 1764, 36 L.Ed.2d at 666-67.]
The Parole Board, with the assistance of other state agencies, including the Public Defender's Office and the AOC, adopted the previously summarized procedures for providing counsel to indigent parolees in the circumstances required by Gagnon. See Ante at 571, 644 A.2d at 1125. Plaintiffs have not challenged the adequacy of these procedures for determining which indigent parolees are entitled to representation by assigned counsel in parole revocation proceedings under Gagnon.[3] Instead, plaintiffs' argument is that, as a matter of state constitutional and common *575 law, any indigent parolee charged with a violation which may result in a revocation of parole should be assigned counsel.
The New Jersey courts have not had occasion in recent years to consider the scope of the right to counsel in parole revocation proceedings because the Public Defender Act, as amended in 1974, L. 1974, c. 33, § 2, expressly required the Public Defender to provide legal representation to any indigent parolee "who is charged with violation of that parole or who is under consideration for revocation of parole." N.J.S.A. 2A:158A-5.1.[4] However, in other contexts our courts have recognized a right to assigned counsel which is broader than that guaranteed under the Sixth Amendment. Thus, in Rodriguez v. Rosenblatt, 58 N.J. 281, 295, 277 A.2d 216 (1971), the Court held that even though petty offenders were not then entitled to counsel as a matter of federal constitutional law, "as a matter of simple justice, no indigent *576 defendant should be subjected to a conviction entailing imprisonment in fact or other consequence of magnitude without first having had due and fair opportunity to have counsel assigned without cost." Similarly, in State v. Sanchez, 129 N.J. 261, 274, 609 A.2d 400 (1992), the Court stated that "[a]lthough the language of article 1, paragraph 10 of the New Jersey Constitution is virtually identical with that of the Sixth Amendment, we have held in other contexts that the State Constitution affords greater protection of the right to counsel than is provided under the federal constitution." See also New Jersey Div. of Youth & Family Servs. v. E.B., 137 N.J. 180, 186-188, 644 A.2d 1093, 1096-1097 (1994); State in Interest of Antini, 53 N.J. 488, 490-91, 251 A.2d 291 (1969); State v. Horton, 34 N.J. 518, 522-24, 170 A.2d 1 (1961).
It would appear that our courts have the authority under the principles set forth in Rodriguez v. Rosenblatt and State v. Sanchez to require that counsel be appointed in parole revocation proceedings in a broader range of circumstances than is required by the Supreme Court's opinion in Gagnon. However, plaintiffs have failed to demonstrate that the Gagnon standards provide inadequate procedural protections to indigent parolees charged with violations of parole. As the Court noted in Gagnon, the majority of parole revocations are based upon a parolee's commission of a new offense or his admitted violation of the conditions of parole. 411 U.S. at 787, 93 S.Ct. at 1762, 36 L.Ed.2d at 664. Plaintiffs have not made a persuasive showing that counsel must be automatically assigned under such circumstances in order to safeguard a parolee's right to a fair revocation hearing. Instead, there appears to us to be a reasonable basis for the Court's view in Gagnon that the presentation of "a justifiable excuse for [such a] violation or a convincing reason why revocation is not the appropriate disposition ... is often not susceptible of proof or is so simple as not to require either investigation or exposition by counsel." Ibid. Moreover, our Supreme Court has characterized Gagnon as requiring "the appointment of counsel when fundamental fairness so requires," New Jersey State Parole Bd. v. Byrne, 93 *577 N.J. 192, 209, 460 A.2d 103 (1983), without suggesting that New Jersey law would require a more expansive right to counsel in probation revocation proceedings. Therefore, we conclude that plaintiffs have not shown that the case-by-case approach to the assignment of counsel endorsed by the Supreme Court in Gagnon is inadequate to assure the assignment of counsel in those parole revocation proceedings "in which fundamental fairness  the touchstone of due process " requires the State to provide counsel for indigent parolees. 411 U.S. at 790, 93 S.Ct. at 1763, 36 L.Ed.2d at 666.
We emphasize that the Parole Board, as the agency entrusted with the statutory responsibility to conduct parole hearings, also has the responsibility to ensure that parolees charged with parole violations are provided with legal representation in conformity with constitutional requirements. See id. at 790-91, 93 S.Ct. at 1763-64, 36 L.Ed.2d at 666. This means that the Parole Board must process all parolees' requests for counsel in a timely and fair manner.[5] Moreover, the Parole Board must assure that *578 counsel is assigned sufficiently in advance of any scheduled hearing to provide adequate representation. If the Parole Board fails to properly discharge these responsibilities, plaintiffs may apply for appropriate relief under Rule 1:10-5.

II
Plaintiffs' contention that the State must provide counsel to indigent parolees by adequately funding a Parole Revocation Unit in the Public Defender's Office rests on two grounds. First, plaintiffs argue that Gagnon requires that indigent parolees who are entitled to counsel be represented by attorneys who are compensated by the State. Second, plaintiffs argue that only experienced, compensated attorneys can provide effective legal representation in parole revocation proceedings.
Plaintiffs' first argument relies upon the Court's statement in Gagnon that "there will remain certain cases in which fundamental fairness ... will require that the State provide at its expense counsel for indigent probationers or parolees." 411 U.S. at 790, 93 S.Ct. at 1763, 36 L.Ed.2d at 666 (emphasis added). However, when this statement is read in context, it becomes clear that the Court's reference to the State providing counsel "at its expense" was simply a shorthand means of distinguishing between retained and appointed counsel. The Court commenced its discussion of the right to counsel in Gagnon by stating that "[t]he second, and *579 more difficult, question posed by this case is whether an indigent probationer or parolee has a due process right to be represented by appointed counsel at these [revocation] hearings," to which the Court appended a footnote recognizing the distinction between a parolee's right to the assistance of retained and appointed counsel. 411 U.S. at 783, 93 S.Ct. at 1760, 36 L.Ed.2d at 662. Moreover, even in the context of criminal trials, the Court has never held that appointed counsel must be compensated, see Martin County, Fla. v. Makemson, 479 U.S. 1043, 107 S.Ct. 908, 93 L.Ed.2d 857 (1987) (White, J., dissenting from denial of certiorari), and our Supreme Court has expressly held that a defendant's right to counsel guaranteed by the Sixth Amendment may be satisfied by the appointment of uncompensated private counsel. Madden v. Township of Delran, 126 N.J. 591, 599-600, 601 A.2d 211 (1992); State v. Rush, 46 N.J. 399, 405-07, 217 A.2d 441 (1966); accord Hallford v. State, 629 So.2d 6, 11-12 (Ala. Crim. App. 1992), cert. denied, ___ U.S. ___, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994); Wilson v. Commonwealth, 836 S.W.2d 872, 880 (Ky. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1857, 123 L.Ed.2d 479 (1993). Therefore, we are satisfied that Gagnon does not require that counsel assigned to represent indigent parolees be compensated by the State.
Plaintiffs' second argument  that assigned private counsel who are inexperienced in parole revocation proceedings cannot provide effective legal assistance  has been expressly rejected by our Supreme Court in the context of criminal trials.
Nor is prior experience in criminal matters essential. The law is a vast field and no man is in command of all of it. Lawyers, as do judges, move from scene to scene, absorbing the special features of each. A capacity to that end goes to the essence of the practice of law. A lawyer's training equips him for it, and his every experience sharpens that skill. And although a new scene may demand a greater initial effort, the newcomer may well bring a zeal and a freshness long lost to a tired or comfortable expert.
....
... This is not to say that another approach would not be more desirable. Rather our point is that what we have meets the constitutional demand....
 [State v. Rush, supra, 46 N.J. at 406-07, 217 A.2d
 441.]
*580 The Court has recently expressed a similar view regarding the representation of indigent defendants in municipal court proceedings:
Witnesses who indicated their belief that experienced counsel in municipal court provide services superior to assigned counsel fell short of making out a case of constitutional deprivation. Although we do not now subscribe to what we said some years ago in Rush  to the effect that there is no difference in the quality of representation  the extent of deprivation demonstrated in this case was limited and confined largely to debatable opinions, albeit from experienced practitioners. Certainly there was no showing that the present system came even close to threatening a substantial deprivation of the right to the assistance of competent counsel. Even accepting that in general, a system of paid counsel, either paid by the court on assignment or supplied through a public defender, results in better representation than that provided by pro bono counsel, such a showing does not equate with a constitutional denial of counsel. As has often been noted, the right to counsel is the right only to the effective assistance of counsel, not to the best counsel.
....
We do not mean to suggest that the differences complained of do not exist or that they are not undesirable.... All we mean is that on the record before us there is no constitutional deprivation.
[Madden v. Township of Delran, supra, 126 N.J. at 599-600, 601 A.2d 211 (citation omitted).]
We perceive no basis for reaching a different conclusion regarding the representation of indigents in parole revocation proceedings. These proceedings, conducted before administrative officials, are less formal and less complex than jury trials held in the Superior Court, or even prosecutions heard in the municipal courts. Moreover, if it appears that a particular parole revocation proceeding will be unusually complex, and consequently that experienced counsel should be assigned, the Parole Board will have the responsibility, with the assistance of the AOC, to select counsel who has the special competence required to handle that matter. Cf. id. at 608, 601 A.2d 211 ("[I]f the municipal court judge concludes that defendant will not receive effective assistance of counsel, the judge's obligation will be to select other counsel.").
We also reject plaintiffs' argument that the representation of indigent parolees by assigned private counsel will unduly delay their parole revocation proceedings. Although there appears to have been an undue delay in assigning counsel to plaintiff Frank, *581 we cannot conclude that a system of assigned counsel is unworkable on the basis of this single case. However, we remind the Parole Board that it has the responsibility to assure that counsel are assigned to qualifying indigents in a timely manner. If the Parole Board fails to discharge this responsibility, plaintiffs may seek appropriate supplemental relief. R. 1:10-5.

III
The Civil Rights Attorney's Fees Awards Act of 1976 provides that in any action brought under 42 U.S.C.A. § 1983, "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." 42 U.S.C.A. § 1988(b). Although this legislation confers discretion upon a trial court to determine whether an award of attorney's fees is appropriate, the Supreme Court has indicated that "a prevailing plaintiff `should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" Hensley v. Eckerhart, supra, 461 U.S. at 429, 103 S.Ct. at 1937, 76 L.Ed.2d at 48 (quoting S.Rep. No. 94-1011, p. 4 (1976), U.S.Code Cong. & Admin. News, pp. 5908, 5912) (quoting Newman v. Piggie Park Enter., Inc., 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263, 1266 (1968))). "[P]laintiffs may be considered `prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Id. at 433, 103 S.Ct. at 1939, 76 L.Ed.2d at 50 (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir.1978)); accord Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 789-92, 109 S.Ct. 1486, 1492-94, 103 L.Ed.2d 866, 875-77 (1989); Singer v. State, 95 N.J. 487, 494-95, 472 A.2d 138, cert. denied, 469 U.S. 832, 105 S.Ct. 121, 83 L.Ed.2d 64 (1984). Thus, "a plaintiff `prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v. Hobby, ___ U.S. ___, ___, 113 S.Ct. 566, 573, 121 L.Ed.2d 494, 503 (1992).
*582 The trial court correctly concluded that plaintiffs were "prevailing parties" within the meaning of § 1988, as interpreted by the Court in Hensley and Farrar.[6] Although plaintiffs' suit primarily sought to establish that indigent parolees facing parole revocation are automatically entitled to the assignment of counsel as a matter of state law, the immediate relief they sought was the assignment of counsel to the individually named plaintiffs. It is clear from the record that at least plaintiff Frank secured that relief. In addition, there is ample support in the record for the trial court's finding that "it was through [plaintiffs'] efforts that the Parole Board adopted a remedial scheme to guarantee their rights pursuant to Gagnon v. Scarpelli." After the Legislature failed to fund the Parole Revocation Unit in the Public Defender's Office and the then Public Defender announced that, beginning on July 1, 1991, his office would no longer be able to provide representation to indigent parolees charged with violations of parole, the Parole Board failed to take any steps to establish an alternative system of representation in conformity with Gagnon until after this suit was filed in August of 1991. Moreover, following the filing of this suit, the Parole Board did not submit a proposal for providing representation to indigent parolees in conformity with Gagnon until July 2, 1992, approximately one year after the Public Defender terminated his representation of indigents involved in parole revocation proceedings, and it did not actually begin to implement that proposal for at least another six months. Indeed, even after this appeal was filed, the Parole *583 Board filed a motion for a stay which, if granted, would have further delayed the assignment of counsel in conformity with Gagnon. Therefore, we are satisfied that this litigation "modif[ied] the [Parole Board's] behavior in a way that directly benefits [plaintiffs]," and that plaintiffs are thus "prevailing parties" within the intent of § 1988. Farrar v. Hobby, supra, ___ U.S. at ___, 113 S.Ct. at 573, 121 L.Ed.2d at 503.
We also reject the Parole Board's argument that even if plaintiffs are viewed as "prevailing parties," they should nevertheless be denied an award of counsel fees because the absence of counsel in their parole revocation proceedings resulted from the Legislature's defunding of the Public Defender's Parole Revocation Unit rather than the Parole Board's own action or inaction. The system of legal representation ultimately established as a result of this litigation demonstrates that the Parole Board could have immediately taken appropriate steps to conform with the requirements of Gagnon, even without the assistance of the Legislature, when the Public Defender announced that he could no longer provide representation to indigent parolees. In any event, the fact that an executive agency's violation of a litigant's constitutional rights results from legislative action does not qualify as a "special circumstance" which justifies the denial of an award of counsel fees under § 1988. "Fee awards against enforcement officials are run-of-the-mill occurrences, even though, on occasion, had a state legislature acted or reacted in a different or more timely manner, there would have been no need for a lawsuit or for an injunction." Supreme Court of Va. v. Consumers Union of the United States, Inc., 446 U.S. 719, 739, 100 S.Ct. 1967, 1978, 64 L.Ed.2d 641, 658 (1980); see also Gregg v. Township Comm. of Hazlet, 232 N.J. Super. 34, 39, 556 A.2d 348 (App.Div. 1989). Gagnon places the responsibility for the enforcement of the federal constitutional right to counsel in parole revocation proceedings upon "the state authority charged with responsibility for administering the ... parole system," 411 U.S. at 790, 93 S.Ct. at 1763, 36 L.Ed.2d at 666, which in this State is the Parole Board. Therefore, *584 the Parole Board may be held liable for counsel fees under § 1988 in a successful action brought under § 1983 to enforce this constitutional right.
Although a prevailing party ordinarily is entitled to an award of counsel fees, the trial court has a responsibility to determine what fee is "reasonable" under all the circumstances. "If ... a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." Hensley v. Eckerhart, supra, 461 U.S. at 436, 103 S.Ct. at 1941, 76 L.Ed.2d at 52. In determining whether to award "a fully compensatory fee" to an attorney for a prevailing party, "the most critical factor is the degree of success obtained." Id. at 435-36, 103 S.Ct. at 1940-41, 76 L.Ed.2d at 52; accord Farrar v. Hobby, supra, ___ U.S. at ___, 113 S.Ct. at 574, 121 L.Ed.2d at 505; Singer v. State, supra, 95 N.J. at 499-500, 472 A.2d 138. If the court concludes that a fee should be adjusted downward because the prevailing party has achieved only a limited degree of success, it "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." Hensley v. Eckerhart, supra, 461 U.S. at 436-37, 103 S.Ct. at 1941, 76 L.Ed.2d at 52.
The trial court did not undertake the analysis required by Hensley in determining the amount of counsel fees to award plaintiffs. The court only considered the reasonableness of the time spent on the litigation and counsels' hourly rates, stating that "the billings seem proper except for certain double billings [for which the court deducted $1,000 from the total fee sought by plaintiffs]," without considering whether "the degree of success obtained" justified a "fully compensatory fee." Id. at 435-36, 103 S.Ct. at 1940-41, 76 L.Ed.2d at 52. Therefore, the case must be remanded to the trial court for reconsideration of the amount of counsel fees in light of the principles set forth in Hensley.
Accordingly, on plaintiffs' appeal we affirm the order of December 3, 1992, insofar as it rejects plaintiffs' claims that indigent *585 parolees have a broader right to counsel in parole revocation proceedings under state law than the federal constitutional right established by Gagnon and that the State is required to appropriate sufficient funds for the Public Defender to provide parolees with such representation in these proceedings. On the Parole Board's cross-appeal we affirm the trial court's determination that plaintiffs are "prevailing parties" entitled to counsel fees under § 1988, but we remand for a redetermination of the amount of the award in conformity with the principles set forth in this opinion.
NOTES
[1] The Legislature has continued to decline to appropriate any funds for this purpose in subsequent years. L. 1993, c. 155, 1993 N.J. Laws ___, ___, 1993 Senate No. 2000 1, 93 (June 29, 1993); L. 1992, c. 40, 1992 N.J. Laws 271, 379.
[2] Defendants waived any issue of mootness which could arise if the plaintiffs' parole revocation hearings were conducted prior to the conclusion of this litigation, acknowledging that the right to counsel issue was capable of repetition yet evading review and that it was important enough to require resolution on the merits. See New Jersey Div. of Youth & Family Servs. v. J.B., 120 N.J. 112, 118-19, 576 A.2d 261 (1990).
[3] Accordingly, we do not decide whether these procedures in fact satisfy Gagnon. However, insofar as the questionnaire used for screening requests for counsel suggests that a parolee not only must make "a timely and colorable claim that he has not committed the alleged violation of the conditions upon which he is at liberty," 411 U.S. at 790, 93 S.Ct. at 1764, 36 L.Ed.2d at 666, but also must show that the defense of the charges will be "complex or otherwise difficult to develop or present," ibid., we have serious doubts whether the Parole Board has correctly interpreted Gagnon. Since the two alternative grounds for the assignment of counsel under Gagnon are set forth in the disjunctive, are separated by a semi-colon (rather than a comma), and are separately identified by number, it would appear that the Court intended the precondition "that the reasons are complex or otherwise difficult to develop or present" to be applied only in circumstances where "the violation is a matter of public record or is uncontested" and where the parolee believes there are "substantial reasons which justified or mitigated the violation and make revocation inappropriate." This interpretation is reinforced by the reference in this qualifying clause to "reasons" that are complex or difficult to present, which is the term used in the immediately preceding clause to refer to mitigating circumstances, but which term is conspicuously absent from the clause describing the first ground for the assignment of counsel. The decisions in other jurisdictions provide inferential support for this interpretation of Gagnon. See, e.g., Forbes v. Roebuck, 368 F. Supp. 817, 820 (E.D.Ky.) (parolee's denial of violating parole requires assignment of an attorney), aff'd, 506 F.2d 1400 (6th Cir.1974); In re Love, 11 Cal.3d 179, 113 Cal. Rptr. 89, 93, 520 P.2d 713, 717 (1974) (a presumptive right to appointed counsel exists "where the parolee denies that he committed the violations and where, even though he does not contest the existence of the violation, he asserts complex matters in mitigation."); Thompson v. State, 413 So.2d 1301, 1302 (Fla. Dist. Ct. App. 1982) (exception to the Gagnon right to appointed counsel is limited to situations where the probationer has been convicted of a crime or where he has admitted the violation). Therefore, we suggest that the Parole Board, in consultation with the Attorney General, should reconsider whether the standards now being utilized for the assignment of counsel in parole revocation proceedings actually comply with the requirements of Gagnon.
[4] Before the Legislature imposed this responsibility upon the Public Defender, this court refused to recognize an indigent's right to appointed counsel in parole revocation proceedings. State v. Morales, 120 N.J. Super. 197, 202, 293 A.2d 672 (App.Div.), certif. denied, 62 N.J. 77, 299 A.2d 75 (1972).
[5] Subsequent to oral argument, the Parole Board submitted monthly statistical tabulations for the period from June 1993 through March 1994 of the number of indigent parolees who have requested counsel and who have actually been assigned counsel in connection with their parole revocation proceedings:

 DISTRICT
 OFFICE INTERVIEWED REFERRED PERCENTAGE
 1 190 3 1.57
 2 8 0 0
 3 42 5 11.90
 4 44 42 95.45
 5 29 5 17.24
 6 36 10 27.78
 7 38 36 94.74
 8 22 21 95.45
 9 97 1 1.03
 10 29 18 62.06
 11 41 23 56.09
 12 38 13 34.21
 13 14 1 7.14

These statistics reveal rather startling disparities among the different offices of the Bureau of Parole in granting requests for the assignment of counsel. However, this data is not part of the record on appeal, and in any event would not be sufficient, in and of itself, to warrant the conclusion that the Parole Board's system for the assignment of counsel in parole revocation proceedings is unworkable. Nevertheless, this data indicates a need for the Parole Board and Bureau of Parole to review the operation of the screening system to assure that indigent parolees are being assigned counsel in all districts under the full range of circumstances contemplated by Gagnon.
[6] The Parole Board sent a letter four days before oral argument arguing for the first time that the award of counsel fees was improper because the Parole Board is not a "person" within the intent of § 1983. Since this argument was not presented to the trial court, nor briefed by the parties on this appeal, it is not properly before us. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973). In any event, the Court has held that counsel fees may be awarded against a state agency pursuant to § 1988. Hutto v. Finney, 437 U.S. 678, 694-700, 98 S.Ct. 2565, 2575-78, 57 L.Ed.2d 522, 536-40 (1978); see also Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 2313, 105 L.Ed.2d 45, 58 (1989); Morrison v. Ayoob, 627 F.2d 669, 672-73 (3d Cir.1980), cert. denied, 449 U.S. 1102, 101 S.Ct. 898, 66 L.Ed.2d 828 (1981).