# IN THE SUPREME COURT OF IOWA

No. 12–2226

Filed February 12, 2014

**EDWARD CROWELL,**

Appellee,

vs.

**STATE PUBLIC DEFENDER,**

Appellant.

------------------------------------------------------------------

**IOWA DEPARTMENT OF MANAGEMENT,**

Plaintiff,

vs.

**IOWA DISTRICT COURT FOR LINN COUNTY,**

Defendant.

---

Appeal from and certiorari to the Iowa District Court for Linn County, Jane F. Spande, District Associate Judge.

State agencies challenge a district court order appointing counsel at public expense in a termination-of-parental-rights proceeding under Iowa Code chapter 600A. **DISTRICT COURT JUDGMENT AFFIRMED; WRIT ANNULLED.**

Samuel P. Langholz, State Public Defender, Julie A. Miller, Assistant State Public Defender, for appellant.

Thomas J. Miller, Attorney General, Jeffrey S. Thompson, Deputy Attorney General, and Meghan L. Gavin, Assistant Attorney General, for plaintiff.

Edward F. Crowell, Cedar Rapids, pro se.

**APPEL, Justice.**

A juvenile court ordered the State Public Defender to pay for court-appointed counsel for an indigent parent in a contested termination-of-parental-rights proceeding brought pursuant to Iowa Code chapter 600A (2013). The juvenile court concluded that although the indigent parent was not statutorily entitled to counsel at public expense, payment of the attorney's fees at public expense was constitutionally required. The district court reasoned that principles of equal protection prohibited treating an indigent parent in an involuntary termination proceeding filed under Iowa Code chapter 600A differently than an indigent parent in a termination proceeding filed under Iowa Code chapter 232. The State Public Defender denied payment on the ground the appointed attorney's fees did not qualify for payment from the indigent defense fund. After the appointed attorney sought judicial review of the State Public Defender's denial, the juvenile court ordered the Iowa Department of Management (Department) to pay the fees.

The State Public Defender and the Department filed an appeal challenging the juvenile court's appointment of counsel at public expense. We conclude the State Public Defender's appeal is moot and the Department's appeal should be treated as a petition for an original writ of certiorari, which we grant. On the merits, we conclude the juvenile court correctly determined the indigent parent was entitled to counsel at public expense. As a result, we annul the writ.

## I. Factual and Procedural Background.

A child's father and stepmother filed a termination action pursuant to Iowa Code section 600A.5, seeking to terminate the parental rights of the child's mother. The grounds urged for the termination were abandonment and nonpayment of child support. The mother requested

the juvenile court to appoint counsel at public expense to provide her representation in the proceeding.

In considering the application, the juvenile court first considered whether the mother had a statutory right to counsel under Iowa Code section 600A.6A(2). This provision provides that "the parent against whom the petition is filed" is entitled to counsel at public expense if (1) the parent requests appointment; (2) the parent is indigent; (3) the juvenile court determines that "because of lack of skill or education," the parent "would have difficulty in presenting [his or her] version of the facts in dispute, particularly where the presentation of the facts requires the examination or cross-examination of witnesses or the presentation of complex documentary evidence"; and (4) the juvenile court determines the parent "has a colorable defense to the termination of parental rights, or there are substantial reasons that make termination of parental rights inappropriate." Iowa Code § 600A.6A(2).

The juvenile court found the first two elements satisfied, but concluded the third was not met. The juvenile court declined to determine whether the parent had a colorable defense, believing such a finding by the trial court could have a chilling effect on the parent's perception of fairness and interfere with the parent's presentation of relevant evidence during trial. The juvenile court noted, however, the grounds urged for termination, abandonment and nonpayment of support, are factual issues and do not involve complex legal theories. The juvenile court further noted the mother had attended school through eleventh grade, was working on obtaining a GED degree, and was not at any time a special education student or the subject of an individualized education plan. The juvenile court observed the mother was aware of the nature of the proceedings, appeared to understand her obligations with

regard to the presentation of evidence at trial, and had made arrangements for witnesses to appear on her behalf. Finally, the juvenile court stated none of the witnesses appeared hostile to the mother's interests such as to render the presentation of their testimony challenging for the mother. As a result, the juvenile court concluded the mother was not entitled to appointment of counsel under Iowa Code section 600A.6A(2).

The juvenile court next considered whether the mother was entitled to appointed counsel as a matter of constitutional law. The juvenile court noted that in *In re S.A.J.B.*, 679 N.W.2d 645, 650–51 (Iowa 2004), we held the general assembly could not constitutionally distinguish between the right to counsel at public expense in privately prosecuted termination proceedings under Iowa Code chapter 600A and state-prosecuted termination proceedings under Iowa Code chapter 232.[1] The juvenile court concluded that under *In re S.A.J.B.* the equal protection clause of the Iowa Constitution guarantees an indigent parent the right to counsel at public expense in an involuntary chapter 600A termination proceeding because the right is coextensive with an indigent parent's right to counsel in a chapter 232 termination proceeding. In particular, the juvenile court noted the involuntary nature of both proceedings. As a result, the juvenile court held that while the mother

---

[1]The parties that may initiate a termination proceeding under Iowa Code chapter 232 include a child's guardian, guardian ad litem, custodian, the department of human services, a juvenile court officer, and a county attorney. Iowa Code § 232.111(1) (2013). Once the petition is filed under chapter 232, the county attorney is generally charged with presenting evidence in support of the petition, though the attorney general may be substituted in limited circumstances. *Id.* § 232.114(2)–(3). Comparatively, the only parties that may initiate a termination proceeding under Iowa Code chapter 600A include a parent, prospective parent, custodian, and guardian. *Id.* § 600A.5(1). The party who files the petition under chapter 600A, not the county attorney or attorney general, presents evidence in support of the petition. *In re S.A.J.B.*, 679 N.W.2d 645, 648 (Iowa 2004).

did not qualify for appointed counsel under section 600A.6A, she was nonetheless entitled to counsel under *In re S.A.J.B.* Accordingly, the juvenile court appointed attorney Edward Crowell to represent the mother in the proceeding. Ultimately, the juvenile court terminated the mother's parental rights based upon the grounds urged in the petition.

The original juvenile court order appointing Crowell directed the petitioners—the father and stepmother—to pay the cost of the mother's legal defense. The juvenile court subsequently amended its order to require payment by the State Public Defender after determining the petitioners were indigent. The juvenile court further approved fee expenses in excess of the State Public Defender's fee guidelines, noting that while the legal issues in the case were not complex, the factual context in which those theories arose was "unusual so as to render a greater amount of time than contemplated by fee guidelines reasonably necessary for location and presentation of relevant evidence and legal theory."

Crowell submitted a claim of $2040 to the State Public Defender for his legal services in representing the mother. Pursuant to Iowa Code section 13B.4(4)(*c*)(2)(b), the State Public Defender denied payment on the ground the fees did not qualify for payment from the indigent defense fund. The notice to Crowell stated:

> The court's May 4, 2012, appointment order specifically found that [S.H.] was not entitled to counsel under Iowa Code section 600A.6A, rather that she was entitled to court appointed counsel under *In re S.A.J.B.* Iowa Code section 815.11 authorizes payment for court appointed attorney fees under 600A.6B, but no other costs under 600A are payable from the indigent defense fund. Section 600A.6B only applies to counsel appointed under 600A.6A. Section 815.11 does not authorize payment for counsel appointed under *In re S.A.J.B.*

Crowell filed a timely motion for judicial review of the State Public Defender's action.[2] He requested a new appointment order satisfying the requirements of section 600A.6A or review of the fee claim denial. The juvenile court noted that though it had previously appointed counsel based solely upon a finding of indigency, with the benefit of the evidence received at trial, it would likely find the mother met the requirements for appointment of counsel under section 600A.6A(2). The juvenile court noted that while the grounds urged for her termination of parental rights were factual, the mother

> likely would have been prejudiced in her ability to obtain and adequately present evidence relevant to her defense as well as arguing its significance. Her ability to effectively examine and cross-examine witnesses would have also likely been adversely impacted by the hostility between the parties and extended family.

Nonetheless, the juvenile court declined to amend its prior order to resolve the issue. The juvenile court then reconfirmed its conclusion that the mother was entitled to counsel at public expense under *In re S.A.J.B.*

The juvenile court next considered which state entity would be liable for payment of the fees. The juvenile court noted Iowa Code section 815.10(1)(*a*) authorizes the appointment of counsel to represent an indigent person in chapter 600A termination cases "in which the indigent person is entitled to legal assistance at public expense." The juvenile court reasoned that although the State Public Defender was responsible for providing counsel under chapter 600A, the use of the phrase "public expense" in section 815.10(1)(*a*) limited the obligation to

---

[2]Iowa Code section 13B.4(4)(*d*) permits a claimant for payment of indigent defense costs to seek judicial review of a denial of payment by the State Public Defender.

an appointment made pursuant to the restrictive provisions of section 600A.6A(2) and did not extend to a constitutionally required appointment under *In re S.A.J.B.*

Having concluded attorney's fees generated by constitutionally mandated counsel could not be paid under section 815.11, the juvenile court looked for an alternative method of payment.[3] The juvenile court concluded the attorney's fees should be paid by the Department pursuant to Iowa Code chapter 25. The juvenile court noted that in determining the amount of fee award, the fee guidelines of the State Public Defender would be probative but not determinative as to reasonableness. Accordingly, the juvenile court ordered that the reasonable costs of the defense of the mother be submitted to the Department for payment pursuant to section 25.1 rather than to the State Public Defender pursuant to section 815.11.

The State Public Defender and the Department filed an appeal.

## II. Subject Matter Jurisdiction.

**A. Introduction.** Although no party challenges this court's jurisdiction in this case, an appellate court has responsibility *sua sponte* to police its own jurisdiction. *See, e.g., State ex rel. Vega v. Medina*, 549 N.W.2d 507, 508 (Iowa 1996) (noting this court may raise the issue of its subject matter jurisdiction *sua sponte*); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–95, 118 S. Ct. 1003, 1011–13, 140 L. Ed. 2d 210, 226–27 (1998); *Baird v. Norton*, 266 F.3d 408, 410 (6th Cir. 2001); *GNB Battery Techs., Inc. v. Gould, Inc.*, 65 F.3d 615, 619 (7th Cir. 1995). In the exercise of this responsibility, we must first address

---

[3]Iowa Code section 815.10(1)(*a*) provides for the appointment of counsel and section 815.11 provides for payment from the indigent defense fund.

questions related to our subject matter jurisdiction that spring from the record of this case.

The first jurisdictional question is whether this court may consider the State Public Defender's appeal when the challenged order did not impose an obligation upon the State Public Defender and no party seeks to impose such an obligation on appeal. The second jurisdictional question is whether this court may consider the Department's appeal when the Department did not participate as a party in the litigation below.

**B. State Public Defender.** Following the hearing on Crowell's motion for judicial review of the State Public Defender's denial of his claim for payment, the juvenile court rendered a final judgment that was appealable by the State Public Defender. *See* Iowa Code § 13B.4(4)(*d*)(7). The jurisdictional question regarding the State Public Defender, however, is whether its appeal is moot. If an appeal no longer presents a justiciable controversy because the disputed issue has become academic or nonexistent, the appeal is ordinarily deemed moot. *In re M.T.*, 625 N.W.2d 702, 704 (Iowa 2001).

Here, the judgment of the juvenile court does not order the State Public Defender to do anything and does not impose any liability upon it. It is the fiscal ox of the Department that has been gored. The Department does not seek to shift liability to the State Public Defender, but only asserts that no state entity should be liable for the attorney's fees in this case. Similarly, Crowell does not assert the State Public Defender should pay the bill. As to the State Public Defender, then, the issues raised in this appeal are of academic interest only. Accordingly, we will not entertain the State Public Defender's appeal because it is not

aggrieved by the district court order and will not be aggrieved in light of the limited nature of the issues raised.

### C. Department of Management.

1. *Introduction.* Iowa Code section 13B.4(4)(*d*)(7) does not permit the Department to file an appeal from the juvenile court's final judgment. That is not, however, the end of the inquiry as to the Department. Prior to the enactment of this section,[4] we recognized the proper avenue to seek review of a trial court's allowance of fees for appointed counsel at public expense was by petition to this court for an original writ of certiorari. *See, e.g., State Pub. Defender v. Iowa Dist. Ct. for Warren Cnty.*, 594 N.W.2d 34, 36 (Iowa 1999). When an appeal should have been filed as a writ of certiorari, our rules of appellate procedure authorize us to consider the appeal as though it was properly filed as a certiorari action. Iowa R. App. P. 6.108; *see also Bousman v. Iowa Dist. Ct.*, 630 N.W.2d 789, 793 (Iowa 2001). Therefore, we will consider the appeal filed by the Department as a petition for an original writ of certiorari. The jurisdictional question then becomes whether the Department can maintain an original certiorari action.

2. *Iowa caselaw.* We begin our discussion with a review of certiorari actions in Iowa. The Iowa Constitution provides the supreme court has the power "to issue all writs and process necessary to secure justice to parties." Iowa Const. art. V, § 4. A writ of certiorari falls within the scope of this constitutional provision. While we refer to

---

[4]The legislature amended section 13B.4 in 1999 to grant an attorney the right to seek judicial review of a fee claim denial or reduction by the State Public Defender. *See* 1999 Iowa Acts ch. 135, § 4 (codified at Iowa Code § 13B.4(4)(*d*) (Supp. 1999)). The legislature amended section 13.4(4) in 2006 to permit either a fee claimant or the State Public Defender to appeal a final judgment following judicial review of a fee claim denial. *See* 2006 Iowa Acts ch. 1041, § 3 (codified at Iowa Code § 13B.4(4)(*d*)(7) (2007)).

parties seeking a writ of certiorari as "plaintiffs" and our appellate rules refer to a certiorari proceeding as an "original" action, *see* Iowa R. App. P. 6.107(1)(*a*), a certiorari action resembles an appeal in many respects. To the extent not specifically prescribed by rule or statute, our rules of appellate procedure apply to certiorari actions. *Id.* r. 6.501.

A writ of certiorari is limited to triggering review of the acts of an inferior tribunal on the basis the inferior tribunal exceeded its jurisdiction or otherwise acted illegally. *Pfister v. Iowa Dist. Ct.*, 688 N.W.2d 790, 794 (Iowa 2004). Our power to review lower court actions by issuing writs of certiorari is discretionary. *Sorci v. Iowa Dist. Ct.*, 671 N.W.2d 482, 490 (Iowa 2003). Once this court exercises its discretionary power to grant certiorari, we engage in review of the action of the inferior tribunal and either sustain or annul it. No other relief may be granted. *Eden Twp. Sch. Dist. v. Carroll Cnty. Bd. of Educ.*, 181 N.W.2d 158, 165–66 (Iowa 1970).

We have long endorsed the general rule that only a party to the action below may seek a writ of certiorari challenging the action of an inferior tribunal. *E.g.*, *Hohl v. Bd. of Educ.*, 250 Iowa 502, 509, 94 N.W.2d 787, 791 (1959); *Polk County v. Dist. Ct.*, 133 Iowa 710, 713, 110 N.W. 1054, 1055 (1907). On several occasions, however, we have held that plaintiffs who were not parties in the proceedings before the inferior tribunal had standing to seek a writ of certiorari.

A relatively recent case in which we embraced the exception to the general rule is *State v. West*, 320 N.W.2d 570 (Iowa 1982). In *West*, we considered whether individuals who were not parties to a criminal proceeding could bring a certiorari action challenging a district court order distributing a restitution fund established for victims of the underlying crimes. *Id.* at 571. We recognized that while generally only a

party to an action below may obtain the writ, nonparties below could obtain the writ if they "prove that they have been injured in a special manner, different from that of the public generally." *Id.* at 573. In *West,* the parties seeking certiorari alleged that they suffered pecuniary damage as a result of the defendant's criminal activities in the underlying action and that when the district court denied their claims to the restitution fund their only recourse was a writ of certiorari. *Id.* Accordingly, we held the parties seeking certiorari had standing to maintain the action. *Id.*

Similarly, in *Hohl* we considered whether individuals who questioned certain school reorganization proceedings had standing to bring a certiorari action. 250 Iowa at 503, 94 N.W.2d at 788. We noted certiorari proceedings were "*available to all persons* who may show a substantial interest in the matter challenged." *Id.* at 509, 94 N.W.2d at 791. We noted that while generally only a person who is a party to the underlying action may secure a writ of certiorari, there was "a tendency to broaden the scope of the writ" by allowing certain other parties to seek the writ to avoid the denial of substantial injustice. *Id.* at 509, 94 N.W.2d at 791–92. We held that individuals affected by the reorganization could bring a certiorari action to challenge the reorganization proceedings. *Id.* at 510, 94 N.W.2d at 792.

Finally, in an earlier case, *Hemmer v. Bonson*, 139 Iowa 210, 214–15, 117 N.W. 257, 258–59 (1908), we considered whether a citizen who did not participate in a district court action brought by another citizen to enjoin operation of a liquor nuisance could bring a certiorari action challenging the narrowness of the district court ruling. A statute granted any citizen in the same county as the saloon standing to bring an injunction proceeding, and the citizen challenging the ruling lived in the

same county. *Id.* at 215, 117 N.W. at 259. We held the citizen had standing because the citizen could have filed an action under the statute to enjoin the nuisance and because the citizen, due to the proximity of the tavern to her residence, had a special interest in the case. *Id.* at 215–17, 117 N.W. at 259. In particular, we noted cases from other jurisdictions holding certiorari is open to an individual "who suffers peculiar injury by reason of a judgment or order entered in excess of jurisdiction." *Id.* at 215, 117 N.W. at 259.

Our recent caselaw demonstrates the limits of the exception to the general rule that a plaintiff in a certiorari action must have been a party in the action below. In *Alons v. Iowa District Court*, 698 N.W.2d 858, 862 (Iowa 2005), state senators and representatives, a congressman, a pastor, and a church who were not parties to the proceedings in district court brought a certiorari action challenging the district court's order that, on its face, dissolved the marriage of a same-sex couple married in Vermont. They asserted the district court lacked jurisdiction to enter the dissolution of marriage decree. *Id.*

We held the plaintiffs did not have standing to bring the certiorari action. *Id.* at 874. After citing *West* for the proposition that generally only a party to an action may obtain the writ, we recognized the exception applies where plaintiffs have a " 'specific personal or legal interest in the litigation' " and show that " 'they have been injured in a special manner, different from the public generally.' " *Id.* at 864–65 (quoting *Citizens for Responsible Choices v. City of Shenandoah*, 686 N.W.2d 470, 475 (Iowa 2004) (first quote) and *West*, 320 N.W.2d at 573 (second quote)). Accordingly, we concluded none of the plaintiffs in the certiorari action had standing to seek the writ. *Id.* at 873–74; *see also Williamson v. Kelley*, 271 N.W.2d 727, 729–30 (1978) (finding attorneys

lacked standing to bring certiorari action challenging district court order that trials no longer be held in a courthouse because of a fire hazard).

While the above cases demonstrate that a plaintiff in a certiorari action who did not participate below may successfully invoke this court's jurisdiction under the exception to the general rule, we have encouraged plaintiffs who are not parties to the underlying action to nonetheless participate in the inferior proceedings when possible. For example, in *Iowa Department of Transportation v. Iowa District Court*, 546 N.W.2d 620, 623 (Iowa 1996) (per curiam), we expressed a desire to "encourage" the filing of a motion to rescind before the inferior tribunal when a nonparty did not receive notice of the action until after entry of the order. The advantage of such an approach is that it gives the inferior tribunal the first opportunity to correct its mistakes. *Id.*

In a later case, *State Public Defender v. Iowa District Court for Black Hawk County*, 633 N.W.2d 280, 281 (Iowa 2001), the public defender filed a petition for a writ of certiorari in this court challenging a district court order requiring the public defender to turn over records of a juvenile for sealing. We granted the writ and the certiorari proceeding commenced in this court. *Id.* While the certiorari action was pending, the public defender filed a motion in the district court alleging it had not received notice of the hearing leading to the order of the district court. *Id.* After the county attorney resisted the motion on the basis the district court lacked jurisdiction to consider the public defender's motion because of the pending certiorari proceeding, we granted the public defender's motion for a limited remand to allow the district court to consider the issue. *Id.* On limited remand, the district court concluded that it erred in not giving the public defender notice, that the hearing on limited remand cured the error, and it affirmed its earlier order. *Id.* We

then proceeded to consider the original action and held the district court erred in ordering the public defender to surrender its records. *Id.* at 282–83.

In sum, while our caselaw is sparse, there is authority supporting an exception to the general rule requiring a plaintiff in a certiorari action to have participated in the proceedings below. We have sought to encourage a nonparty to present issues to the inferior tribunal in a motion to rescind, *see Arthur Ray Pointer v. Iowa Dep't of Transp.*, 546 N.W.2d 623 (Iowa 1996), and have allowed a limited remand after granting a writ of certiorari to allow the inferior tribunal to reconsider its order, *see Iowa Dist. Ct. for Black Hawk Cnty.*, 633 N.W.2d at 281.

3. *Federal caselaw.* Our approach to the standing of nonparties to the proceedings below to bring certiorari actions finds support in analogous federal cases relating to the standing to bring appeals. Two cases of the United States Supreme Court bear on the issue. In *Marino v. Ortiz*, 484 U.S. 301, 304, 108 S. Ct. 586, 587, 98 L. Ed. 2d 629, 633 (1988) (per curiam), the Supreme Court noted the right to appeal an adverse judgment is generally limited to parties to a lawsuit or those who properly become parties. In *Devlin v. Scardelletti*, 536 U.S. 1, 122 S. Ct. 2005, 153 L. Ed. 2d 27 (2002), however, the Supreme Court embraced a more flexible position. It noted that the term "party" indicates not "an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context." *Id.* at 10, 122 S. Ct. at 2010, 153 L. Ed. 2d at 38.

The lower federal courts have, in limited circumstances, allowed an entity or individual who did not participate in the proceedings below to be considered a party for purposes of appeal. For example, federal courts have held a party not named below may appeal an order or

judgment involving a consent decree that purports to bind nonparties, *see United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO,* 931 F.2d 177, 183–84 (2d Cir. 1991), injunctions that purport to bind nonparties, *see R.M.S. Titanic, Inc. v. Haver,* 171 F.3d 943, 955 (4th Cir. 1999); *United States v. Kirschenbaum,* 156 F.3d 784, 794 (7th Cir. 1998) (restraining order); *In re Estate of Ferdinand Marcos Human Rights Litig.,* 94 F.3d 539, 544 (9th Cir. 1996); *In re Piper Funds Inc., Institutional Gov't Income Portfolio Litig.,* 71 F.3d 298, 301 (8th Cir. 1995) (stay of litigation); *cf. Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 108–12, 89 S. Ct. 1562, 1568–70, 23 L. Ed. 2d 129, 139–42 (1969) (holding it was improper to enter judgment and an injunction against the parent company of a party on the basis the parent company was not designated a party to the litigation, did not formally appear at trial, was not made a party by service of process, and had not agreed to be bound by a stipulation that it and its subsidiary should be considered one party for purposes of litigation), a turnover order that requires nonparties to divest themselves of assets, *see Maiz v. Virani,* 311 F.3d 334, 339 (5th Cir. 2002), a receivership order that directly affects the rights of parties not before the court, *see Fid. Bank, Nat'l Ass'n v. M.M. Grp., Inc.,* 77 F.3d 880, 882 (6th Cir. 1996), and an order directing law firms to limit compensation to nonparties contrary to private agreements, *see Dietrich Corp. v. King Res. Co.,* 596 F.2d 422, 424 (10th Cir. 1979).

All of these cases, of course, involve tangible interests of the nonparties that are directly affected by the lower court judgment or order. The federal courts consistently hold that a judgment cannot be appealed merely because the order appealed from contains language or reasoning that a party deems is adverse to its interest. *See, e.g., Boston*

*Tow Boat Co. v. United States*, 321 U.S. 632, 633, 64 S. Ct. 776, 776–77, 88 L. Ed. 975, 977 (1944).

The federal courts have also considered whether a nonparty with concrete interests directly affected by a court order or judgment must run the gauntlet of contempt in order to challenge the validity of the order or judgment. A number of federal courts directly addressing this issue have concluded that the better course is to allow a direct appeal by the nonparty. *See Kirschenbaum,* 156 F.3d at 794; *In re Estate of Ferdinand Marcos*, 94 F.3d at 544; *In re Piper Funds*, 71 F.3d at 301.

Based on the caselaw, the leading treatise on federal practice and procedure notes that "nonparties can achieve standing to appeal by a variety of methods in a variety of circumstances." 15A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3902.1, at 132 (1992). Further, the treatise notes there are "easy cases in which a nonparty is formally addressed by a court order." *Id.* at 122. The treatise cautions, however, that "[a]ppeal by way of a simple notice of appeal should be available only to nonparties directly bound or affected by an order." *Id.* at 132.

4. *Caselaw from other state appellate courts.* We also look to case developments in other states to evaluate our established approach to the standing issue. As with the federal courts, many state courts allow nonparties below to launch appeals in certain limited circumstances. For example, state courts have held nonparties may appeal orders or judgments approving settlements when pecuniary interests are directly affected, *see Dowling v. Stapley,* 211 P.3d 1235, 1258 (Ariz. Ct. App. 2009); *In re Clergy Case I,* 116 Cal. Rptr. 3d 360, 366–67 (Ct. App. 2011), an order requiring a third party to release assets, *see People v. Hernandez,* 91 Cal. Rptr. 3d 604, 606 (Ct. App. 2009), an order requiring

a nonparty state agency to provide services to a juvenile, *see In re C.A.G.*, 903 P.2d 1229, 1233 (Colo. App. 1995), an order requiring a nonparty attorney to pay for interpreting services provided to a defendant, *see Swindle v. Benton Cnty. Circuit Ct.*, 211 S.W.3d 522, 524 (Ark. 2005), an order distributing the assets of an estate in a fashion affecting interests of nonparty beneficiaries, *see In re Estate of Strong*, 550 N.E.2d 1201, 1206 (Ill. App. Ct. 1990), orders subjecting nonparties to the terms of an injunction, *see Barham v. City of Atlanta*, 738 S.E.2d 52, 55 (Ga. 2013); *Ex parte State Pers. Bd.*, 45 So. 3d 751, 754 (Ala. 2010), orders appointing experts at the expense of a nonparty county, *see In re Payment of Witness Fees in State*, 507 N.W.2d 576, 578 (Wis. Ct. App. 1993), and an order imposing sanctions on an attorney, *see Wieman v. Roysden*, 802 P.2d 432, 435 (Ariz. Ct. App. 1990). The exception to the general rule that one must be a party below to bring an appeal, however, does not allow an appeal merely because a party does not like the precedent or may suffer an indirect impact from it. *See Colo. Permanente Med. Grp., P.C. v. Evans*, 926 P.2d 1218, 1224 (Colo. 1996); *Corsello v. Verizon N.Y., Inc.*, 908 N.Y.S.2d 57, 77 (App. Div. 2010); *Castaldi v. 39 Winfield Assocs., LLC*, 803 N.Y.S.2d 716, 716 (App. Div. 2005). These cases tend to support our approach to the ability of nonparties below to bring a certiorari action in our court in limited circumstances.

5. *Discussion.* The Department has shown a direct injury resulting from the district court's order which orders it, by name, to pay the attorney's fees in this case. The injury is not speculative, and it directly follows from the district court's order that explicitly requires the Department to pay the attorney's fees incurred in the representation of the mother. The injury is plainly special to the Department and not one held by the public generally. *See West*, 320 N.W.2d at 573. The

circumstances of this case are materially similar to other cases where the nonparty has been permitted to seek a writ of certiorari or file an appeal. *See id.*; *Hohl*, 250 Iowa at 510, 94 N.W.2d at 792; *see also Swindle*, 211 S.W.3d at 524; *In re C.A.G.*, 903 P.2d at 1233; *In re Payment of Witness Fees*, 507 N.W.2d at 578. We conclude the Department has met the requirements for the exception to the general rule that a plaintiff in a certiorari action must be a party to the proceedings below.

We similarly do not find any procedural roadblocks to allowing the Department to challenge the district court order in this case. Like the state and federal courts cited above, we do not believe the Department must run the risk of contempt to challenge the order. *See, e.g., Kirschenbaum*, 156 F.3d at 794; *In re Estate of Ferdinand Marcos*, 94 F.3d at 544; *In re Piper Funds*, 71 F.3d at 301.

We also believe that when an order or judgment purports to bind a third party, intervention below is not required. *See Barham*, 738 S.E.2d at 55 (noting it was incumbent on the party seeking enforcement of an order against another to join the other party in the litigation and rejecting argument that it was incumbent upon the nonparty to intervene); *Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel*, 151 P.3d 732, 756–57 (Haw. 2007) (permitting a nonparty to the litigation to appeal an award of attorneys' fees against it even though the nonparty appellant did not intervene in the litigation below); *see also Martin v. Wilks*, 490 U.S. 755, 763, 109 S. Ct. 2180, 2185, 104 L. Ed. 2d 835, 845 (1989) ("[A] party seeking a judgment binding on another cannot obligate that person to intervene; he must be joined."), *superseded by statute on other grounds*, Civil Rights Act of 1991, Pub. L. No. 120–166, 105 Stat. 1074, *as stated in Landgraf v. USI Film Prods.*, 511 U.S. 244, 251, 114 S. Ct. 1483, 1489–90, 128 L. Ed. 2d 229, 244 (1994).

It may well be better practice, where possible, to give the lower tribunal the first opportunity to correct its error, either through a motion to rescind or a limited remand after the certiorari petition has been granted, *see Iowa Dep't of Transp.*, 546 N.W.2d at 623; *Iowa Dist. Ct. for Black Hawk Cnty.*, 633 N.W.2d at 281, but we do not think such an approach is a jurisdictional prerequisite to the exercise of our jurisdiction here. Unlike in *Iowa Department of Transportation* and *Iowa District Court for Black Hawk County*, the district court in this case decided the very issues the Department seeks to raise in this certiorari action. Further, while the Department was not a party to the underlying action, the State Public Defender participated in the proceedings below and had precisely the same interest as the Department with respect to the issues raised in this appeal. In this respect, the case is similar to *Hemmer*, where although the parties seeking certiorari did not participate in the proceedings before the inferior tribunal, other citizens with identical interests did participate. 139 Iowa at 215, 117 N.W. at 259. The juvenile court has already had the first opportunity to consider the issues raised in this certiorari action, and a motion to rescind or a limited remand would be a fruitless exercise.

For the above reasons, we conclude the Department has shown a concrete pecuniary injury directly flowing from the juvenile court order. The Department, therefore, has standing to maintain a certiorari proceeding under the exception to the general requirement that parties participate in the proceedings before the inferior tribunal as a precondition to seeking a writ of certiorari. Accordingly, we grant the writ.

**III. Discussion of Merits of the Department's Writ of Certiorari.**

**A. Standard of Review.** Under a writ of certiorari, our review is for errors at law. *Pfister*, 688 N.W.2d at 793. To the extent constitutional issues are involved, however, our review is de novo. *Id.* at 794.

**B. Positions of the Parties.** The Department asserts the juvenile court correctly determined the mother was not entitled to appointment of counsel at public expense under Iowa Code section 600A.6A(2). Because the mother was not entitled to counsel under Iowa Code section 600A.6A(2), the Department reasons, the juvenile court lacked the authority to require the state to pay for counsel. *See Maghee v. State*, 639 N.W.2d 28, 31 (Iowa 2002) (questioning, in a consideration of whether prison inmates challenging the reduction of good time credit are entitled to counsel at state expense, whether the inherent power of the court to appoint counsel also includes the power to order the state to compensate the appointed counsel). The Department maintains Crowell is not entitled to payment at public expense "unless payment is constitutionally required and section 600A.6A's limitations on the appointment of counsel are . . . constitutional."

The Department then attacks the juvenile court's ruling that the provision of counsel was constitutionally required. According to the Department, the juvenile court improperly relied on *In re S.A.J.B.* to require the appointment of counsel in this case. The Department notes Iowa Code section 600A.6A(2) was enacted in response to *In re S.A.J.B.* and, as a result, contends *In re S.A.J.B.* does not address the constitutionality of the new statutory provision.

To the extent the rationale in *In re S.A.J.B.* is applicable, the Department contends it was wrongly decided and invites us to reverse course. The Department argues *In re S.A.J.B.* fails to recognize the distinction between a chapter 232 termination proceeding and a chapter 600A termination proceeding. The Department further maintains *In re S.A.J.B.* fails to properly weigh the state's interest in preserving scarce resources as a compelling interest sufficient to support the distinction between state-prosecuted terminations and privately prosecuted terminations.

Crowell responds by arguing the juvenile court misconstrued Iowa Code section 600A.6A(1), which states, "Upon the filing of a petition for termination of parental rights under this chapter, the parent identified in the petition shall have the right to counsel in connection with all subsequent hearings and proceedings." Crowell argues the unqualified right to counsel in section 600A.6A(1) impliedly grants indigents the right to appointed counsel at public expense in all termination proceedings under chapter 600A. Crowell argues section 600A.6A(2), which provides for appointment of counsel for indigents only in limited circumstances, is an independent provision designed to allocate the costs of appointed counsel. According to Crowell, if counsel is appointed under section 600A.6A(1), the Department pays the expenses, while if counsel is appointed under section 600A.6A(2), the State Public Defender pays the expenses. If we adopted this interpretation of subsections (1) and (2), Crowell argues, the constitutional issue otherwise raised in the case could be avoided.

In the alternative, Crowell argues if section 600A.6A(2) does limit the right to appointed counsel at public expense, it runs afoul of the constitutional principles articulated in *In re S.A.J.B.* Crowell notes *In re*

*S.A.J.B.* holds the distinction with respect to the right to counsel at public expense in termination proceedings under chapter 600A and chapter 232 must be evaluated under strict scrutiny because the proceedings involve the liberty interests associated with a parent raising a child. He notes that in *In re S.A.J.B.* this court ruled the financial interest of the state in limiting the right to counsel at public expense was legitimate but did not arise to a compelling interest. *See* 679 N.W.2d at 650.

In summarizing the arguments presented by the parties, we emphasize two issues that have not been raised and are thus not before the court. No doubt in order to avoid conflicting positions, the State Public Defender and the Department do not claim the decision of the juvenile court to order the Department, rather than the State Public Defender, to pay the costs of the mother's counsel was erroneous. As a result, the question of whether the attorney's fees in this case should be paid by the State Public Defender under Iowa Code section 815.11 or the Department under Iowa Code section 25.1 is not before this court.

Similarly, Crowell does not contend the juvenile court erred in declining to make an appointment pursuant to Iowa Code section 600A.6A(2). As a result, the question of whether the juvenile court erred in not making the appointment in the first place under section 600A.6A(2) is not before the court.

**C. Statutory Argument.** Ordinarily, we look to statutory issues first in order to avoid unnecessary constitutional questions. *E.g.,* *Simmons v. State Pub. Defender,* 791 N.W.2d 69, 73–74 (Iowa 2010); *State v. Fuhrmann,* 261 N.W.2d 475, 477 n.1 (Iowa 1978). If fairly possible, we interpret a statute to avoid doubt as to its constitutionality. *E.g., Simmons,* 791 N.W.2d at 73; *Thompson v. Joint Drainage Dist. No. 3-*

*11*, 259 Iowa 462, 468, 143 N.W.2d 326, 330 (1966); *Jacobs v. Miller*, 253 Iowa 213, 218, 111 N.W.2d 673, 676 (1961). If the statute can bear no reasonable construction that avoids constitutional doubt, however, we proceed to the constitutional issue presented. *Simmons*, 791 N.W.2d at 73; *Thompson*, 259 Iowa at 468, 143 N.W.2d at 330; *Jacobs*, 253 Iowa at 218, 111 N.W.2d at 676.

While Crowell invites us to avoid the constitutional issue in this case through statutory construction, we cannot do so. In order to support his construction, Crowell urges us to sever section 600A.6A(1) from section 600A.6A(2). While a free-standing constitutional right to counsel might imply a right to counsel at public expense for indigents, *see Gideon v. Wainwright*, 372 U.S. 335, 343–45, 83 S. Ct. 792, 796–97, 9 L. Ed. 2d 799, 804–05 (1963) (holding the right to counsel under the Sixth Amendment creates a right to appointment of counsel at public expense for indigent criminal defendants), we think it clear that an unqualified statutory right to counsel at public expense cannot be implied under section 600A.6A(1) because of the express provision limiting the appointment of counsel at public expense in section 600A.6A(2).[5] Statutes must be read in context. *E.g., State v. Romer*, 832 N.W.2d 169, 176 (Iowa 2013); *Jacobson Transp. Co. v. Harris*, 778 N.W.2d 192, 197 (Iowa 2010). In our view, section 600A.6A(1) cannot be reasonably read to require the appointment of counsel at public expense in all cases when the very next provision, section 600A.6A(2), expressly limits that right. Moreover, there is simply no suggestion in the statute

---

[5]Article I, section 10 of the Iowa Constitution provides, "In all criminal prosecutions, and in all cases involving the life, or liberty of an individual the accused shall have a right to . . . the assistance of counsel." Crowell makes no article I, section 10 claim in this case.

that subsections (1) and (2) were designed to create a bifurcated payment mechanism for court-appointed counsel as suggested by Crowell. While we do construe statutes to avoid constitutional questions when reasonably possible, we cannot rewrite them. We therefore reject Crowell's statutory argument. As a result, in the posture of this case we must address the underlying constitutional issue.

**D. Constitutional Issue**. The Department invites us to revisit our holding in *In re S.A.J.B.* There, we considered whether the state could extend to indigent parents the right to counsel at public expense in a state-prosecuted proceeding to terminate parental rights under chapter 232, but decline to extend the same right to appointment of counsel at public expense in a privately prosecuted proceeding under chapter 600A. *In re S.A.J.B.*, 679 N.W.2d at 648. The indigent parent challenged this classification as violating the equal protection provisions of the United States and Iowa Constitutions. *Id.* at 647.

Recognizing the question remained open under the United States Constitution, we proceeded to decide the case based upon the equal protection clause of the Iowa Constitution, article I, section 6. *Id.* at 648. We noted parental rights are considered fundamental rights under the Iowa Constitution. *Id.*; *see also Santi v. Santi*, 633 N.W.2d 312, 318 (Iowa 2001) (recognizing that " 'the parenting right is a fundamental liberty interest that is protected against unwarranted state intrusion' " and subjecting a statute authorizing a court to override a parental decision about grandparent visitation to strict scrutiny (italics omitted) (quoting *In re Bruce*, 522 N.W.2d 67, 71 (Iowa 1994))); *Callender v. Skiles*, 591 N.W.2d 182, 190 (Iowa 1999) (finding a putative father wishing to challenge the presumed paternity of a child born into a marriage had a fundamental liberty interest in challenging paternity). We then

proceeded to consider whether the classification was narrowly tailored to serve a compelling state interest. *In re S.A.J.B.*, 679 N.W.2d at 649–51. In doing so, we explicitly rejected the notion that a state's pecuniary interest in not providing counsel, standing alone, was a compelling interest. *Id.* at 650. While we recognized that indigents facing termination under chapter 232, unlike under chapter 600A, must overcome the resources of the state, we concluded the state action remains essentially the same. *Id.* at 650–51. In reaching this conclusion, we quoted the United States Supreme Court, which emphasized that regardless of the nature of child termination the respondent " 'resists the imposition of an official decree extinguishing, as no power other than the State can, her parent-child relationships.' " *Id.* at 650 (emphasis omitted) (quoting *M.L.B. v. S.L.J.*, 519 U.S. 102, 116 n.8, 117 S. Ct. 555, 564 n.8, 136 L. Ed. 2d 473, 488 n.8 (1996)).

As a result of our analysis, we concluded the legislative framework was unconstitutionally underinclusive to the extent it did not afford the privilege of counsel at public expense to parents facing termination of their parental rights under chapter 600A. *Id.* at 651. Accordingly, we had the option of declaring the extension of the benefit—the right to counsel at public expense under chapter 232—a nullity or extending it to include others aggrieved by exclusion. *Id.* We concluded the circumstances required the extension of the right to appointed counsel at public expense to indigent persons under chapter 600A. *Id.*

We reject the argument of the Department that this case is not controlled by *In re S.A.J.B.* It is true, of course, that in *In re S.A.J.B.* there was no provision for appointment of counsel for indigent parents under chapter 600A, while in this case, counsel may be available to some indigents on a case-by-case basis. Yet, in *In re S.A.J.B.* we applied

categorical equal protection principles in holding that a distinction between chapter 232 proceedings and chapter 600A proceedings for purposes of providing counsel to indigents could not be sustained. While due process principles under the United States Constitution may involve highly fact-specific analyses and balancing tests, *see Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 31–33, 101 S. Ct. 2153, 2161–62, 68 L. Ed. 2d 640, 652–53 (1981) (declining to find that the Due Process Clause of the Fourteenth Amendment requires the appointment of counsel at public expense in every termination-of-parental-rights proceeding involving an indigent parent and instead holding due process requires the issue be decided on a case-by-case basis), *In re S.A.J.B.* applied categorical equal protection principles and did not employ the case-by-case approach embraced by the *Lassiter* majority, *see In re S.A.J.B.*, 679 N.W.2d at 651. Under *In re S.A.J.B.*, indigent parents facing termination of parental rights under chapter 600A cannot be treated differently than indigent parents facing termination of parental rights under chapter 232 when it comes to appointment of counsel. *Id.*

In the alternative, the Department essentially reprises the arguments made in *In re S.A.J.B.* in suggesting we modify or overturn our holding in that case. We decline to do so. We note that our holding in *In re S.A.J.B.* does not appear to be an outlier. Indeed, a number of state courts have reached a similar conclusion. *See In re Adoption of Meaghan*, 961 N.E.2d 110, 112–13 (Mass. 2012) (holding indigent parents are constitutionally entitled to appointment of counsel at public expense in privately initiated termination-of-parental-rights proceedings because "the same fundamental, constitutionally protected interests are at stake" as in a state-initiated termination proceeding); *In re Adoption of K.A.S.*, 499 N.W.2d 558, 563 (N.D. 1993) (rejecting distinction between

private and public termination and holding that termination, through an adoption proceeding, of the parental rights of an indigent parent denied appointment of counsel violates the equal protection provision of the state constitution); *Zockert v. Fanning*, 800 P.2d 773, 777–78 (Or. 1990) (finding no distinction between privately initiated and state-initiated termination proceedings under the equal protection provision of the state constitution); *see also In re Adoption of K.L.P.*, 763 N.E.2d 741, 753 (Ill. 2002) (holding that where "significant state action has resulted in the custody or guardianship of the minor child being placed with a person other than the parent, equal protection requires that the parent be provided with the assistance of counsel, if she is indigent, in a subsequent action to terminate her parental rights"). We find no basis to disturb our prior ruling.

As a result, the juvenile court correctly determined the parent in this contested[6] termination proceeding under chapter 600A is entitled to counsel on the same terms as would be provided in a termination proceeding initiated under chapter 232. To the extent the juvenile court's order required the appointment of counsel at public expense, it is affirmed.

**IV. Conclusion**.

We conclude that though the State Public Defender is statutorily entitled to appeal the juvenile court's final judgment, the mootness doctrine precludes our consideration of the issues raised by the State Public Defender on appeal. Further, treating the Department's appeal as

---

[6]In *In re J.L.L.*, 414 N.W.2d 133, 135 (Iowa 1987), we held that there was no equal protection or due process requirement for appointment of counsel in an *uncontested*, privately initiated termination. This case involves a *contested* termination. As a result, *In re S.A.J.B.*, not *In re J.L.L.*, is the applicable precedent.

petition for a writ of certiorari and granting the writ, we conclude the juvenile court correctly appointed counsel at public expense to represent the mother in the contested termination proceeding under chapter 600A. We therefore annul the writ.

**DISTRICT COURT JUDGMENT AFFIRMED; WRIT ANNULLED.**