# IN THE COURT OF APPEALS OF IOWA

No. 22-1347
Filed January 11, 2023

**IN THE INTEREST OF G.G., A.U. and K.G.,**
    **Minor Children,**

**B.A., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Union County, Monty Franklin, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Jeremy M. Evans of Carr Law Firm, P.L.C., Des Moines, for appellant mother.

Brenna Bird, Attorney General, and Ellen Ramsey-Kacena (until withdrawal) and Mary A. Triick, Assistant Attorneys General, for appellee State.

Meggen Weeks, Afton, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Ahlers and Buller, JJ.

**BULLER, Judge.**

The mother appeals following termination of her parental rights to A.U. (born 2006), G.G. (born 2008), and K.G. (born 2011).  The record details the mother's substantial struggles with substance abuse and mental health, as well as the dysfunctional home environment she provided for these children.  In resolving this appeal, we find the statutory elements of termination were met, reject additional claims made by the mother, and affirm.

### I.      Background Facts and Proceedings

This family first came to the attention of the Iowa Department of Health and Human Services (HHS) in October 2020, when the mother refused to seek necessary mental-health treatment for one of the children.  HHS also suspected controlled-substance abuse, but this was not confirmed until 2021, when the mother came to one of the children's schools under the influence—and with her paramour passed out in the front of her car.  The children were removed from the home in March 2021 due to the mother's and paramour's use of methamphetamine, and the children were adjudicated as children in need of assistance (CINA).

The mother and paramour were ordered to complete mental-health and substance-abuse treatment, but neither successfully completed a program.  During the life of the CINA cases and subsequent termination, the mother tested positive for methamphetamine on three different occasions and the paramour at least once.  The mother made some strides toward treatment in the months immediately preceding termination, but she still had not completed a program or shown consistent progress as of the termination hearing.  The juvenile court also

expressed well-grounded concerns about the mother's honesty with treatment providers.

The paramour was incarcerated for a portion of the CINA proceedings and was a significant source of conflict and instability in the home. In addition to the documented methamphetamine use, the juvenile court found that the paramour and mother "fought almost continuously and at times [the mother] would take the children and leave the home and sleep with the children in their car at a park" due to fighting. The juvenile court further found that the mother's dysfunctional relationship with the paramour had traumatized the children, which the mother fails to recognize.

None of the children have been in the mother's custody since March 2021. According to HHS, the mother had not seen the children in person during the approximate fourteen months leading up to termination. The juvenile court found the children were so "alienated" from the mother that they essentially refused to have contact with her. At the time of termination, the guardian ad litem reported that all of the children were "in a really good place now" and strongly desired that they *not* be returned to the mother's custody.

## II.    Jurisdiction

The supreme court issued an order inviting the parties to file jurisdictional statements regarding whether the notice of appeal in this matter was timely filed. The supreme court then submitted that question to our court for resolution. The mother filed a statement arguing she intended to timely appeal all of the terminations, but that a clerical error as to one of the case numbers rendered one notice untimely. The State did not file a response to the supreme court's order but

did address the delayed-appeal issue in its response to the petition on appeal. In any event, we would be required to decide the jurisdictional question even without adversarial briefing. *See Crowell v. State Pub. Def.*, 845 N.W.2d 676, 681 (Iowa 2014) ("[A]n appellate court has responsibility *sua sponte* to police its own jurisdiction.").

We are bound by the supreme court's recent decisions concerning delayed appeals in juvenile cases. *See In re A.B.*, 957 N.W.2d 280, 289 n.2 (Iowa 2021); *In re W.M.*, 957 N.W.2d 305, 316–17 (Iowa 2021). "[A] delayed appeal is allowed 'only where the parent clearly intended to appeal,' the 'failure to timely perfect the appeal was outside of the parent's control,' and the delay was 'no more than negligible.'" *In re W.T.*, 967 N.W.2d 315, 322 (Iowa 2021) (quoting *A.B.*, 957 N.W.2d at 292). The record tends to support appellate counsel's assertion regarding the incorrect case number. We find the mother's delay was due to a clerical error by counsel that was no more than negligible and therefore conclude, under controlling case law, that we have jurisdiction over the appeal.

### III.     Error Preservation or Waiver

The State argues that error was not preserved as to the statutory grounds for termination but agrees error was preserved as to the request for additional time, the bond exception, and the best interests of the children. The relevant exchange in the transcript, elicited when the court inquired of the mother's lawyer, reads as follows:

> On behalf of my client, we aren't contesting -- but as the evidence indicated, my client would ask that we give her the additional four months left that would have been given in an extension of six months giving her four additional months to continue

the treatment and the services that she finds herself actively engaged in.

(Because neither party sought relief under Iowa Rule of Appellate Procedure 6.807 seeking to correct the record, we must assume the two dashes in the transcript reflect an em-dash, rather than an omission by the court reporter.)  We note that only asking for an extension, rather than resisting the statutory grounds, was consistent with the strategy suggested by counsel's questions at the hearing; none of the questions furthered any challenge to the statutory elements supporting termination.  Last, we observe that there are no pleadings in the file that indicate the mother challenged the statutory grounds for termination, rather than only seeking the extension.

There is some tension in our cases as to whether the normal rules of error preservation apply in this context, or whether the mother could have waived her claims.  *Compare In re C.H.-B.*, No. 18-1246, 2018 WL 4627709, at *1 (Iowa Ct. App. Sept. 26, 2018) ("[S]ufficiency of evidence sustaining any finding may be challenged on appeal from judgment following a bench trial even though the point was not raised in the trial court."), *with In re E.W.*, No. 22-0604, 2022 WL 2824733, at *1 (Iowa Ct. App. July 20, 2022) (finding the appellate court could not reach an unpreserved claim and noting, "Although it may be framed as a failure to preserve error, the failure to contest termination may also be properly deemed waiver of the challenge."), *and In re M.L.H.*, No. 16-1216, 2016 WL 4803999, at *1 (Iowa Ct. App. Sept. 14, 2016) ("Although our prior cases have framed the issue as one of error preservation, it may be more accurate to deem the father's failure to contest termination in the juvenile court as waiver.").  We need not untangle the

tension in the case law to resolve this appeal, and we therefore assume error was preserved and that the claim was not waived, and we proceed to the merits. *See State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999) (bypassing error-preservation concern and proceeding to the merits).

## IV.    Standard of Review

We generally review an order to terminate parental rights de novo. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)).

## V.    Statutory Elements

When parental rights are terminated under multiple statutory grounds, we need only find clear and convincing evidence on one ground to affirm. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). Here, we find it necessary to reach only Iowa Code section 232.116(1)(e) (2022), which primarily requires proof the mother failed to "maintain[ ] significant and meaningful contact with the child[ren]." The HHS case manager testified the mother had no "face-to-face contact with the children" from the time of their "removal in March of 2021" through the termination hearing in May of 2022 and "had minimal video-conference visits with them during that time frame." Based on her testimony, we conclude the State proved that termination was warranted under Iowa Code section 232.116(1)(e).

## VI.    Additional Time

The mother also claims the juvenile court erred in not granting her additional time to "correct the situation and resume care of the child." Like the juvenile court, we reject this argument. To justify the grant of additional time, a parent is required

to prove that the need for removal "will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b) (2022). The mother did not carry this burden.

The undisputed record evidence indicates that the mother had yet to complete a mental-health or substance-abuse program during the life of these cases. The mother also did not contest that she had no in-person contact with her children in the approximately fourteen months leading up to termination. She has persisted in her dysfunctional and unhealthy relationship with the paramour and presently resides in a one-bedroom apartment with no plan in place to accommodate the return of any child to her custody. Last, the mother has not had any contact with the children's schools, teachers, or therapists to make realistic strides toward parenting the children.

As our court has observed before, "The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re D.A.*, 506 N.W.2d 478, 479 (Iowa Ct. App. 1993) (citation omitted). We, like the juvenile court, find no reason to believe that the need for termination would have been eliminated after four months of additional time. These children deserve permanency, and the mother's last-minute efforts did not justify an extension.

## VII. The Bond Exception

Although not a model of clarity, the mother's petition on appeal appears to invoke the permissive bond exception codified at Iowa Code section 232.116(3)(c). We, like the juvenile court, find the record does not support this exception and we decline to apply it.

The mother bears the burden of proof for a permissive exception. *In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018). Yet she offered no independent evidence at the termination hearing and the record includes no discernible evidence that she has any significant bond with these children, let alone a positive one that would overpower the other considerations demonstrating termination is in the children's best interests.

The record evidence actually demonstrates the lack of any bond. As found by the juvenile court, "Any parent-child relationship between [the mother] and the children that may have been in existence prior to the children's removal has been totally destroyed by [the mother's] actions and/or lack of action to improve her situation, and none of the children have any desire to work on reinstating the parent-child relationship." We agree with this finding on de novo review and decline to apply the bond exception as requested by the mother.

## VIII. Best Interests of the Children

The mother's final challenge is to whether termination is in the best interests of the children. On our de novo review, we agree with the juvenile court that termination is appropriate and serves the children's best interests.

We find that the mother's claim on appeal that she has "consistently shown a strong motivation to be reunited with her child[ren]" is divorced from reality and not supported by her conduct during the CINA and resulting termination cases. The children had been out of the mother's custody for about fourteen months at the date of termination, and the mother made little progress during that time. The children, on the other hand, have progressed significantly and have improved mental health in their new placements.

We are required to consider the quality of care the mother would provide if the children were returned to her care, and we see little reason to believe that environment would be any better today than it was when the CINAs were initiated. *See In re J.H.*, 952 N.W.2d 157, 171 (Iowa 2020) ("[T]he parents' past performance . . . may indicate the quality of care the parent is capable of providing in the future." (citation omitted)). Termination is in the best interests of these children.

**AFFIRMED.**