# IN THE COURT OF APPEALS OF IOWA

No. 25-1553
Filed December 3, 2025

**IN THE INTEREST OF N.J.,**
**Minor Child,**

**J.J., Father,**
    Appellant,

**M.H., Mother,**
    Appellant.

_____


Appeal from the Iowa District Court for Davis County, Richelle Mahaffey, Judge.


A mother and father separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**


Ryan J. Mitchell of Orsborn, Mitchell & Goedken, P.C., Ottumwa, for appellant father.

Sarah Wenke, Ottumwa, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Julie R. De Vries of De Vries Law Office, PLC, Centerville, attorney and guardian ad litem for minor child.

Considered without oral argument by Chicchelly, P.J., and Buller and Langholz, JJ.

**LANGHOLZ, Judge.**

A son was removed from his mother's custody in April 2024 after the mother tested positive for methamphetamine, marijuana, and ecstasy at the son's birth.[1] The son was placed with his maternal grandmother and an older half-sibling and has remained there ever since. After months of sporadic visits and no treatment, the mother entered and completed an inpatient program in late 2024. But she was unable to keep up with follow-up treatment and soon relapsed. The father, who refused to comply with services until paternity was established, has failed to follow court orders to engage in substance-use evaluation and treatment and mental-health treatment throughout this case. He has also committed domestic violence against the mother. So after an August 2025 hearing, the juvenile court terminated each of their parental rights. Both parents appeal.

On our de novo review, we agree with the juvenile court. The State proved a statutory ground for termination under Iowa Code section 232.116(1)(h) (2025) because the son could not be safely returned to the father's custody—and the mother does not challenge that ground. Termination is in the best interest of the son—any detriment from severing the parent-child bond does not outweigh the benefit from the son staying in his loving home with his grandmother and sibling. And given the son's young age and the mother's lack of sustained progress, a guardianship is not the best choice for the son's safety and stability. We thus affirm the termination of both parents' parental rights.

---

[1] We avoid using the parties' names to respect their privacy because this opinion—unlike the juvenile court's orders—is public. *Compare* Iowa Code § 232.147(2) (2025), *with id.* §§ 602.4301(2), 602.5110; *see also* Iowa Ct. R. 21.25.

## I.      Background Facts and Proceedings

In September 2023, the Iowa Department of Health and Human Services ("HHS") became involved with the then-pregnant mother when she tested positive for amphetamine in a urine drug screen. In April 2024, she went to the hospital with high blood pressure and again tested positive for amphetamine. Ten days later, she gave birth to the son. She tested positive for methamphetamine, marijuana, and ecstasy; and the son's cord stat test was positive for amphetamine, methamphetamine, and cotinine. HHS was unable to contact the father, and the son was removed from the parents' custody and placed with the maternal grandmother.[2] The father later appeared and tried to assume custody, but the court found continued removal was appropriate because of concerns about his domestic violence and substance use. In early May, the juvenile court adjudicated the son as in need of assistance.

The mother did not attend recommended substance-use treatment for several months after the removal and rarely saw the son. But she participated in a program in late 2024, successfully completing inpatient treatment. HHS decided to see if she could maintain sobriety in the community before returning the son to her care. Unfortunately, the mother did not follow through with her substance-use aftercare, moved in with the father in Missouri, and relapsed in early 2025. She did not submit to most of the requested drug tests after leaving treatment, and she tested positive for methamphetamine in March. Additional domestic violence was alleged to have occurred in early 2025 after the mother moved in with the father.

---

[2] The grandmother has adopted an older half-sibling of the child; the mother's rights to that child were terminated in April 2024 because of the mother's drug use.

The parents split up for a while and the mother lived with a friend, who also is known to use methamphetamine, before returning to the father's home.

The father at first refused to participate in services before saying he would comply with substance-use treatment or mental-health treatment. But his actions did not match his words. He completed a single four-hour domestic violence program but no other treatment. In February 2025, the father tested positive for amphetamine, methamphetamine, and marijuana. The caseworker supervising visits noted as recently as May that both parents "have appeared to be high at visits with" the son. In July, the father completed a substance-use evaluation, but he did not engage in the recommended treatment or attend any of the weekly drug testing requested by HHS in July or August.

HHS asked Missouri to evaluate the father's home for placement under the Interstate Compact on the Placement of Children. But Missouri denied the request "due to [the father]'s lack of involvement and engagement in the [Iowa] treatment plan," only offering to reassess with proof that the father was meeting plan objectives. About a month later, the State petitioned to terminate the parental rights of both parents to the son.

At the August termination hearing, the juvenile court heard testimony from the HHS caseworker, the mother, and the father. HHS shared continuing concerns about both parents' lack of successful substance-use treatment, positive and skipped drug screens, their lack of mental-health evaluation or treatment, and the mother's lack of stable housing. More specifically, the caseworker noted that "lack of drug testing and lack of involvement in substance-abuse treatment . . . tends to be an indicator that there is active use." The continued substance use and lack of

treatment also hampered the parents from moving beyond fully supervised visits with the son. HHS communication with both parents has been "very sporadic" because of the mother changing phone numbers and the father's refusal to respond to messages.

The mother and father were back together and the mother was living at the father's house at the time of the hearing. The mother testified that the domestic violence concerns had been addressed. And she requested a guardianship with her mother serving as guardian. The father testified that HHS had stopped the home study in Missouri. He said he had been drug testing every month for his probation officer and had not failed any test. And he said he last used methamphetamine "at least five, six months ago" around the same time he tested positive for it. He claimed that even then, he only used methamphetamine "occasionally" when hanging out with friends. But he admitted to smoking marijuana for his anxiety—"usually" when he goes to sleep—noting it is "legalized" in Missouri.

The court left the record open for one week after the hearing to give the father the chance to submit the negative substance tests from his parole officer into evidence. But no such evidence was submitted. The juvenile court then terminated the mother's rights under paragraphs "e" and "h" of Iowa Code section 232.116(1). And the father's rights were terminated under paragraphs "b," "e," and "h" of section 232.116(1). They each separately appeal.

## II.    Jurisdiction over the Mother's Appeal

We begin with a jurisdictional hiccup. While no party challenges our appellate jurisdiction, "an appellate court has responsibility *sua sponte* to police its

own jurisdiction." *Crowell v. State Pub. Def.*, 845 N.W.2d 676, 681 (Iowa 2014). Under Iowa Rule of Appellate Procedure 6.102, a notice of appeal in a chapter 232 termination of parental rights case is "initiated by filing the notice of appeal with the clerk of the district court." Iowa R. App. P. 6.102(1)(a). This notice "must be filed in the district court and an informational copy with the supreme court within 15 days after the filing of the order." Iowa R. App. P. 6.101(1)(a). But that deadline "is tolled when the notice is served, provided the notice is filed with the clerk of the district court within a reasonable time." Iowa R. App. P. 6.101(4); *see also Brendeland v. Iowa Dep't of Transp.*, 14 N.W.3d 135, 142–44 (Iowa 2024) (holding that thirty-five-day delay in filing notice of appeal with the district court clerk after service was "within a reasonable time" but "only barely").

Failure to comply with filing deadlines generally deprives appellate courts of jurisdiction over the appeal. *See In re W.M.*, 957 N.W.2d 305, 316 (Iowa 2021). At the same time, parents have constitutionally protected liberty interests in "the care, custody, and control" of their child. *In re A.B.*, 957 N.W.2d 280, 291 (Iowa 2021) (cleaned up). If a "parent's counsel fails to perfect the parent's appeal," the parent has no further recourse to challenge the termination unless a delayed appeal is recognized. *Id.* at 292. And so, our supreme court has decided "we will consider a delayed appeal . . . where the parent clearly intended to appeal and the failure to timely perfect the appeal was outside of the parent's control." *W.M.*, 957 N.W.2d at 316 (cleaned up). But "an untimely appeal should be allowed to proceed only if the resulting delay is no more than negligible." *A.B.*, 957 N.W.2d at 292–93 (finding two-day delay in filing notice of appeal was negligible); *see also*

*In re N.R.*, No. 23-0889, 2023 WL 5605346, at *1 (Iowa Ct. App. Aug. 30, 2023) (finding five-day delay "is more than negligible" and denying delayed appeal).

Here, the termination order was filed on September 5. The mother's attorney filed an informational copy of the notice of appeal—which included the mother's signature and all other required information—with the supreme court clerk on September 19. She also served the notice of appeal on all other parties through the appellate electronic filing system. But she did not file the notice with the district court clerk. Still, three days later, her attorney filed an application for appellate counsel and preparation of the transcript at public expense in the district court, which included the statement: "The Mother directed counsel to file a Notice of Appeal." The application was granted. And the mother filed a timely petition on appeal on October 2. On October 9, our supreme court noted the mother's failure to file a proper notice of appeal and ordered her to "promptly file a notice of appeal in district court." She did so the same day—seventeen days after the deadline and twenty days after service of the notice.

It is questionable whether this is a timely appeal under the appellate rules. If this were not an expedited juvenile case, we would have little difficulty holding that it is timely under the tolling provision of rule 6.101(4). Because the mother served the notice of appeal on all parties and the supreme court clerk, the twenty-day delay between service and filing the notice of appeal falls squarely within the delays held to be reasonable in the context of regular civil cases. *See Brendeland*, 14 N.W.3d at 144. But what is reasonable there may not be in the context of expedited juvenile appeals—designed to serve the best interest of the child and limit the parties time "in a state of limbo while the wheels of justice grind through

the appeal process." *A.B.*, 957 N.W.2d at 291. Indeed, within the thirty-five days found to be a reasonable delay in the general-civil-appeal context, *see Brendeland*, 14 N.W.3d at 144, an expedited juvenile appeal will often be fully briefed and submitted to our court, *see* Iowa Rs. App. P. 6.201(1)(b), 6.202(2).

But we need not resolve that issue. Even assuming the tolling provision does not apply and the appeal was untimely, the mother satisfies the requirements for a delayed appeal. It is clear the mother intended to appeal, given her signature on the informational notice filed with the supreme court within the procedural timeframe. And the petition on appeal was filed within the time frame it would have been if the notice had been timely—it was, in fact, filed a week before the notice of appeal was filed in the district court. The transcripts were still timely ordered. And ultimately there was no delay to the appellate process. Under these circumstances and the governing precedents particular to parental-rights appeals, we have jurisdiction to proceed to the merits. *See W.M*, 957 N.W.2d at 316–17.

### III. Grounds for Termination

Terminating parental rights under Iowa Code chapter 232 follows a three-step process. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). First, the State must prove a statutory ground for termination. *Id.* Second, the State must show termination is in the best interest of the child. *Id.* And third, the parent bears the burden to show whether a discretionary exception applies that should preclude termination. *Id.* We need not address any steps not challenged by a parent. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We review a termination decision de novo, giving "respectful consideration" to the juvenile court's factual findings, especially when based on credibility determinations. *W.M.*, 957 N.W.2d at 312.

The juvenile court terminated the mother's parental rights under paragraphs "e" and "h" of Iowa Code section 232.116(1). "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). The mother only challenges one of the grounds for termination. Because she does not challenge that termination was proper under Iowa Code section 232.116(1)(h), she has waived any challenge to termination on that statutory ground and we can affirm based on that ground without discussing it further. *See In re G.N.*, No. 20-1128, 2020 WL 7022388, at *1 (Iowa Ct. App. Nov. 30, 2020) (affirming based on unchallenged statutory grounds and collecting cases doing the same); *see also P.L.*, 778 N.W.2d at 40 (reasoning that the appellate court did not have to analyze an unchallenged statutory ground); *In re Est. of White*, No. 23-1009, 2024 WL 3887438, at *3 (Iowa Ct. App. Aug. 21, 2024) ("The appellate court will not reverse a ruling of the trial court that rests on independent alternative grounds where the appellant challenges only one of those grounds." (quoting 5 C.J.S. *Appeal & Error* § 839 (May 2024 update))).

The juvenile court terminated the father's parental rights under paragraphs "b," "e," and "h" of Iowa Code section 232.116(1). And the father briefly challenges one element for each ground. He disagrees with the court's findings that he abandoned the son under paragraph "b," that he has not maintained significant and meaningful contact with the son under paragraph "e," and that the son cannot be safely returned to his care under paragraph "h." Since we need

only affirm on one ground, *see A.B.*, 815 N.W.2d at 774, we address the challenge to termination under paragraph "h" of Iowa Code section 232.116(1).

The father makes no challenge to the first three elements of this ground for termination: the child's age, adjudication as a child in need of assistance, and the removal from parental custody. *See* Iowa Code § 232.116(1)(h)(1)–(3). The fourth element requires "clear and convincing evidence that the child cannot be returned to the custody" of the parent at the time of the termination hearing. *Id.* § 232.116(1)(h)(4); *see also In re A.S.*, 906 N.W.2d 467, 473 (Iowa 2018) (interpreting statutory language "at the present time" to mean "at the time of the termination hearing"). On our de novo review, we agree with the juvenile court that the State proved by clear and convincing evidence that the son could not be returned to the father. The father resisted or ignored the court's recommendations beyond visitation for more than a year. He resisted substance-use and mental-health evaluations and treatments, with minimal follow through just before the termination hearing. He claims to have been negative on all his drug tests for his probation officer—but he offered no evidence of that despite the court leaving the record open an extra week for him to do so. The one drug test in evidence showed the father had significant levels of methamphetamine in his system in February 2025. We also consider his on-again, off-again relationship with the mother—who has also continued to struggle with substance use—her presence in the home, and the history of domestic violence between them. We conclude the son could not be safely returned to the father's care at the time of the termination hearing and thus affirm the termination of his parental rights under Iowa Code section 232.116(1)(h).

## IV. Best Interest of the Child

The best interest of the child is the "paramount concern in a termination proceeding." *L.B.*, 970 N.W.2d at 313. We consider both the child's long-range and immediate best interests. *See In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997). And we must "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *see also In re M.W.*, 876 N.W.2d 212, 224 (Iowa 2016). As to the parents' bonds with the child, we consider them to the extent that their severance would impact the "child's mental and emotional condition and needs." *In re L.A.*, 20 N.W.3d 529, 535 (Iowa Ct. App. 2025) (en banc).

The mother argues termination would be detrimental to the son because of their bond and requests additional time for reunification.[3] She claims the son "is too young to understand the idea of permanency." We see nothing in this record to support the mother's assertion that severing her bond with the son will be so detrimental to him to preclude termination. And the mother has had more than a year to make progress toward reunification but has not been able to maintain her sobriety in the community. A further extension of time is not warranted. *See* Iowa Code § 232.104(2)(b) (requiring the court to "enumerate the specific factors, conditions, or expected behavioral changes" to justify a six-month extension).

---

[3] It is unclear from the mother's petition on appeal whether she intended to challenge the court's best-interest analysis or to assert an exception to termination should have been applied. So we address it under our best-interest analysis.

The son is tightly bonded with the grandmother and his older sibling. They are the only family he has ever known. He is integrated into their family. And staying with them would maintain continuity for the son. *See id.* § 232.116(2)(b). Just because the son is too young to understand the concept of permanency does not mean he would not recognize when it is taken away. The mother admitted during trial that if she is sober, the grandmother will let her be in the son's life. And the grandmother has been the steady influence, getting the son to his medical appointments, making sure he is dressed and fed, meeting the son's "physical, mental, and emotional condition and needs." *Id.* § 232.116(2). Terminating the mother's rights is in the son's best interest.

The father also argues termination is not in the son's best interest. He claims that "he can provide a safe, stable and nurturing home for the child and provide all necessities" and asserts a bond with the son. First, the court and HHS have little to no information about the father's home. Missouri denied the request for a home study under the interstate compact based on the father's lack of compliance with services. So we have no basis to find his home is "safe, stable, and nurturing." Second, the court only had the father's word he had negative drug tests for the past several months because he failed to comply with the weekly test requests in the months preceding the termination trial. So the court has no evidence of sobriety beyond the father's testimony. And as explained above, the son is well integrated into the grandmother's home, where he has had safety, stability, and nurturing without the threat of substance use and domestic violence around him. We thus find termination of the father's parental rights is in the son's best interest too.

### V.      Guardianship

Last, the mother argues the juvenile court should have placed the son into a guardianship with the maternal grandmother rather than terminating her parental rights.  She urges that she "has had a cooperative relationship with custodian" and no evidence shows she would undermine a guardian.  "[A] guardianship is not a legally preferable alternative to termination."   *A.S.*, 906 N.W.2d at 477 (cleaned up).  It often does not "achieve permanency" or stability because the court could terminate the guardianship or change the guardian at the parent's request or on its own motion.  *Id.* at 478 (cleaned up).  The son here is very young and has never been in the mother's care.  The mother has not sustained progress despite over a year of offered services.   And so, a guardianship is not a preferred permanency option in this case.  We thus affirm the juvenile court's decision to deny a guardianship and terminate the mother's parental rights.

**AFFIRMED ON BOTH APPEALS.**